**In the Matter of Michael Lee PARSONS, A Minor.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

July 27, 1995.

Application for Permission to Appeal
Denied by Supreme Court
Dec. 18, 1995.

Charles A. Sevier, Michael Wayne Parsons, Wilson, McRae, Ivy, Sevier, McTyier & Strain, Memphis, for Appellant.

Herschel L. Rosenberg, Jacqueline Carson, Van Easton & Rosenburg, Memphis, for Appellee.

Abby R. Rubenfeld, Rubenfeld & Associates, Nashville, for amicus curiae, National Center for Lesbian Rights and Tennesseeans for Equality.

CRAWFORD, Judge.

This is a child custody case. Michael Wayne Parsons (Father) appeals from the order of the juvenile court that awarded custody of Michael Lee Parsons to Jacqueline Behles Carson (Mother).

The conflicts and discord in this case are longstanding and, despite the efforts of many participants, show very few, if any, signs of improvement. The subject of the controversy, Michael Lee Parsons, was born May 15, 1983, to the parties who were not, and never have been, married to one another. Michael resided with Mother from the time of his

birth. Mother subsequently married Gary Carson and they have two children, Tony, born January 1, 1987, and Lisa, born January 1, 1989. The Carsons separated in 1990 and subsequently divorced. Mother has continuously had custody of Tony and Lisa. At the time of the separation, Mother was undergoing physical, emotional, and financial difficulties. In light of these problems, she agreed that Father could have custody of Michael, and a consent order was entered in juvenile court January 3, 1991, to this effect.

On July 19, 1991, Mother filed a petition to obtain custody on the grounds of changed circumstances. The case was taken under advisement by the juvenile court referee, and the court appointed a CASA (Court Appointed Special Advocate) for Michael. Father retained custody during these proceedings and after a hearing on October 29, 1991, an order was entered leaving custody with Father. However, the order provided that the parties were to attend counseling and specific visitation was granted to Mother. On July 14, 1992, Mother filed a petition to hold Father in contempt because of his denial of her visitation privileges. By order entered July 28, 1992, the case was continued to October 27, 1992, with the provision for specific visitation for Mother and the requirement that the parties continue in counseling. In February, 1993, temporary custody of Michael was placed with his maternal grandparents, and Father was restrained from having any contact whatsoever with Michael.

An interim order was entered on February 19, 1993, that, *inter alia,* specifically required that all persons involved in the case refrain from having any discussions with or making any comments to Michael regarding any subjects involved in the case aside from speaking to him about innocuous daily living, health, and school matters. By order of February 25, 1993, temporary custody was returned to Father, and the provisions of the February 19, 1993, interim order remained in effect. Father was also restrained from removing the child from the jurisdiction of the court, and Mother was allowed to resume her regularly scheduled visitation privileges.

The order provided that the parties continue in counseling and therapy, and the case was continued for a period of six months. A guardian *ad litem* was appointed for the minor on June 4, 1993, and on June 17, 1993, Father filed a petition to allow him to remove the child from the jurisdiction of the court. On June 25, 1993, Mother filed a petition to modify the previous orders of the court and requested that the court grant custody of Michael to her due to changed circumstances. Father's petition to remove the child from the jurisdiction was denied, and an order was entered to that effect August 2, 1993. A petition to rehear on this issue was denied August 23, 1993. On October 6, 1993, a hearing was held on Mother's petition for custody, and on October 13, 1993, the referee filed findings and recommendations from which we quote the following:

> The minor child Michael Parsons was born out of wedlock during a time when the parties were living together. The father originally denied paternity but the child was ultimately legitimated, at the age of two, after results of blood tests.

> The father did have contact with the child during the early years and on January 4, 1991 the parties agreed to place custody with the father. On June 19, 1991 the mother petitioned for restoration of custody because of the father's failure to allow visitation, among other things. CASA was appointed on August 20, 1991.

> On October 9, 1991 by order of Court, the father retained custody, a specific visitation schedule was set, and counseling ordered for the parties, especially the child who was caught in the middle of his parent's conflict. Seven months later on June 16, 1992, the mother filed a contempt petition alleging her visitation had been denied. A new CASA was appointed, and on July 28, 1992 case was continued for CASA to monitor visits and parties were to continue counseling.

> On October 27, 1992, the case was continued for Center for Children in Crisis evaluation because of the father's behavior

and his refusal to enter counseling, his continued frustration of the mother's visitation, and intimidation of the mother, CASA, and school personnel.

The Center for Children in Crisis recommended counseling and therapy for all parties and suggested that a custody change be considered if the father was not compliant with Michael's need for individual therapy.

The father's continued refusal to obtain counsel for Michael or himself consistent with the Court's orders resulting in awarding temporary custody to the maternal grandparents on February 9, 1993, and a no contact order against the father.

On August 2, 1993, the Court heard testimony from the parties and witnesses, including Ms. Carson's ex-husband, Mr. John Gary Carson, and Marilyn Misner, Ms. Carson's roommate. The Court found Mr. Parsons in contempt of the previous visitation orders.

The Court believes that underlying Mr. Parsons' behavior is his hostility at Ms. Carson's admission that she is a lesbian. Until this latest hearing this issue was not formally raised, and there has never been any allegation of inappropriate conduct or behavior by Ms. Carson or Ms. Misner.

On the contrary, the Center for Children in Crisis found Ms. Misner to be the more mature of the adults in Michael's life and Mr. Carson, father of Ms. Carson's two other children, testified that Ms. Carson is a good mother, his children are well adjusted and that his relationship with his children is good.

Mr. Parsons is unable to see how his behavior affects his son. He has refused to address Michael's difficulties in school, lack of peer friendships; he has shown an unwillingness to follow court orders regarding visitations, counseling and continues to make negative commentary regarding the mother in a manner that causes the child to choose sides.

The reports of CASA and the Guardian ad litem contain fullsome factual details of Mr. Parsons' personality and behavioral disorder as diagnosed by Center for Children in Crisis. Mr. Parsons' only affirmative response to these issues is by attempting to leave the jurisdiction of the Court.

The mother, on the other hand, has continuously engaged in counseling, corrected her behavior, and "has made remarkable improvement in parenting and has much improved insight into how her inconsistent behavior patterns have contributed to the situation."

Based upon the second report of the Guardian ad litem, it is clear that the father's behavior intentionally places the child in the center of conflict with all around him including interference with the advocate's role of protecting the child's interest which the Court considers a form of emotional abuse.

The Court believes that this child will be better raised by the mother who understands the sensitivity of the conflict, and will work to insure that Michael develops a positive self image, and one that reflects his own maturing judgment.

She will, in this Court's opinion, work very hard to cope with Mr. Parsons' manipulative behavior.

Based upon the child's psychologists, counselors, and advocates, the Court has concluded that Mr. Parsons will never engage in counseling for himself, and will continue to undermine Michael's counseling, (to the extent he feels pressured to continue), undermine any relationship with Michael and his mother, fail to recognize Michael's school deficiencies and possible learning disability, and fail to encourage normal peer relationships.

The referee's findings and conclusions were confirmed by the juvenile court judge as the decree of the court. The decree awards Michael's custody to Mother and provides, *inter alia,* scheduled visitation for Father, child support, continuance of counseling and therapy for the child and the parents, and that the previous orders regarding nega-

tive comments are to remain in force. The decree further provides:

8. That although there has never been an allegation that the mother and her roommate have ever engaged in any inappropriate sexual conduct or contact, the Court states affirmatively that there should be no inappropriate expression of sexual conduct, between Ms. Carson and her roommate.

9. That the mother shall refrain from smoking around Michael even though there are no medical reports asserting an allergic reaction due to smoking. It is in the child's best interest to live in a smoke-free environment.

Father has appealed and presents three issues for review:

1. Whether there was a material change in circumstances justifying the change in custody to the mother?

2. Whether the preponderance of the evidence supports the juvenile court's decision to change custody of the minor to the mother, Jacqueline Carson?

3. Whether the juvenile court erred in refusing to allow the attorney for the father, Michael Wayne Parsons, to explore the lesbian relationship of the mother, Jacqueline Carson, and her live-in friend, Maraline [sic] Ann Misner, and its possible effect on the minor?

■ We will consider the first two issues together. As previously noted, Mother filed a petition for a change of custody in July, 1991, and filed another petition in June, 1993. The first petition was never acted upon, and the court's action in changing custody was premised on the second petition. A decree awarding custody of children is *res judicata* and is conclusive on a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way to make the welfare of the children require a change in custody. *Long v. Long,* 488 S.W.2d 729, 731–32 (Tenn.App. 1972); *Hicks v. Hicks,* 26 Tenn.App. 641, 176 S.W.2d 371, 374–75 (1943).

■ In child custody cases, the welfare and best interest of the children are the paramount concerns and the determination of the children's best interest must turn on the particular facts of each case. *Holloway v. Bradley,* 190 Tenn. 565, 230 S.W.2d 1003 (1950). In *Holloway,* the Court said:

The determining facts in these adoption and custody cases are so infinite in their variety that the reported decision in one case is of little aid or assistance in settling the next. The supreme rule to which all others should yield is the welfare and best interest of the child.

*Id.* 230 S.W.2d at 1006.

In *Bah v. Bah,* 668 S.W.2d 663 (Tenn.App. 1983), the Court established some guidelines for making the determination of best interest:

We adopt what we believe is a common sense approach to custody, one which we will call the doctrine of "comparative fitness." The paramount concern in child custody cases is the welfare and best interest of the child. *Mollish v. Mollish,* 494 S.W.2d 145, 151 (Tenn.App.1972). There are literally thousands of things that must be taken into consideration in the lives of young children, *Smith v. Smith,* 188 Tenn. 430, 437, 220 S.W.2d 627, 630 (1949), and these factors must be reviewed on a comparative approach:

Fitness for custodial responsibilities is *largely a comparative matter.* No human being is deemed perfect, hence no human can be deemed a perfectly fit custodian. Necessarily, therefore, the courts must determine which of two or more available custodians is more or less fit than others.

*Edwards v. Edwards,* 501 S.W.2d 283, 290–91 (Tenn.App.1973) (Emphasis supplied).

*Id.* at 666.

■ It is apparent that in 1990 Mother felt that she was unable to properly care for Michael because of her various problems. She and Father agreed that the best interest of the child at that time would be served if

Father took custody of Michael. Because of Father's action regarding visitation, Mother filed the 1991 petition to regain custody, but this petition was never finalized. However, in the interim, the trial court determined that Mother should have visitation and that the situation of the parties demanded counseling and therapy for Father, Mother, and child. Father's conduct during the course of the proceedings in dealing with counseling, guidance for the child, and overall parenting ability, represented a change insofar as the court's knowledge is concerned. Meanwhile, Mother has made considerable progress in improving her physical and mental condition and has regained the ability to care for her son. There were changed circumstances that warranted a revision in custody arrangements.

The court sought and obtained the benefit of a CASA, a guardian *ad litem,* and various medical personnel. Mother willingly involved herself in the program outlined by the court, and the record discloses that she made steady progress in rehabilitating herself from the condition she was in at the time she agreed to relinquish custody to Father. On the other hand, the record shows that Father, rather than placing the welfare of the child above his personal desires, failed to comply with the court's direction and purposely pursued a course of conduct designed to alienate Michael from his mother. This conduct was recognized by the majority of the witnesses in the case and resulted in the recommendation of the expert witnesses that custody of the child be granted to Mother.

■ Father bases his claim of better comparative fitness on the fact that Mother is a lesbian and lives with her lesbian lover. The lifestyle of parents is certainly a factor to consider in making a custody award. In the case before us, the trial court noted that there were no allegations that "Mother and her roommate have ever engaged in any inappropriate sexual conduct or contact," and the decree prohibits future inappropriate expression of sexual conduct between Mother and the roommate. This Court does not sit as moral arbiters making judgments on what is acceptable social behavior, but we must consider a parent's conduct to the extent the interest of the child is concerned. Our decision should not be interpreted as a blanket approval or disapproval of her lifestyle.

We are required to make a decision based on comparative factors concerning Michael's welfare and best interest. At the time of the hearing in this case, Michael was ten years old, and at the present time he is twelve years old. He has lived with Mother for the majority of his life, and there are strong indications that many of his problems stem from the influences exerted by Father. The record reflects that he is aware of his mother's orientation, and according to the information derived from him by his counselor, he suffers no adverse effects in dealing with his peers. In the custody of Mother, Michael has the benefit of living with his siblings, and the record reflects that the home environment is not unhealthy, morally or physically.

The child's best interest is still the paramount concern of the Court. The criterion to be applied here is not whether the Court approves of the lifestyles involved, but whether the child is located with the preferable custodial parent. Certainly the court cannot disregard a parent's activities insofar as they might operate as a direct influence on the child's proper guidance. The trial court found, and we agree, that Mother has not engaged in "inappropriate sexual conduct or contact" in front of Michael. There simply is no proof in the record before us that the home environment provided by Mother, under the facts and circumstances of this particular case, is comparatively less desirable than the home environment provided by Father. The parenting abilities of both parents could probably stand improvement, and, hopefully they will strive in this direction. Mother has made progress and according to the professionals is sincere in her efforts. However, to date, Father's conduct has shown a tendency to place his interest ahead of those of his son.

■ Since this case was tried by the court sitting without a jury, we review the

case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm absent error of law. T.R.A.P. 13(d). This presumption applies in child custody cases. *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn.1984). The trial court was faced with conflicting evidence concerning the conduct of Mother and the conduct of Father while Michael was in their care and in their dealings with each other. The trial judge as the trier of fact had the opportunity to observe these parties and their manner and demeanor on the witness stand, and the weight, faith and credit accorded to their testimony by the trial judge is entitled to great weight in this Court. *Mays v. Brighton Bank,* 832 S.W.2d 347, 351–52 (Tenn.App. 1992); *Sisk v. Valley Forge Ins. Co.,* 640 S.W.2d 844, 849 (Tenn.App.1982).

Bearing in mind the mandate of a comparative fitness test and a close review of the entire record in this case, we have reached the conclusion that the evidence does not preponderate against the finding by the trial court that the award of custody to Mother is in the best interest of this child. The trial court is maintaining supervision over the continued counseling and therapy and this decree will remain subject to revision should circumstances change.

The judgment of the trial court is affirmed, and the case is remanded to the trial court for such further proceedings as may be necessary. Costs of appeal are assessed against the appellant.

FARMER, J., and BROOKS McLEMORE, Special Judge, concur.