## IN THE COURT OF APPEALS OF TENNESSEE, AT NASHVILLE

**FILED**

**December 22, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

|  |  |  |
|---|---|---|
| **WENDY ANN (JONES) GILLIAM**, | ) | Bedford County Chancery Court |
|  | ) | No. 17,799 |
| Plaintiff/Appellant, | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 01A01-9801-CH-00031 |
|  | ) |  |
| **SCOTT DAVID JONES**, | ) |  |
|  | ) |  |
| Defendant/Appellee. | ) |  |
|  | ) |  |

From the Chancery Court of Bedford County at Shelbyville.
**Honorable Tyrus H. Cobb, Chancellor**

**Robert T. Carter**, HENRY, McCORD, BEAN & MILLER, P.L.L.C., Tullahoma, Tennessee
Attorney for Defendant/Appellant.

**C. Kelly Wilson**, Shelbyville, Tennessee
Attorney for Plaintiff/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J.,W.S.**: (Concurs)
**TOMLIN, Sp. J.**: (Concurs)

Plaintiff Wendy Ann (Jones) Gilliam appeals an order of the trial court removing the parties' minor child from her custody and placing the child in the custody of Defendant Scott David Jones. For the reasons set forth below, we affirm the trial court's modification of custody.

Gilliam and Jones were married in April of 1988. Bradley, the parties' only child, was born in March of 1989. On May 1, 1992, when Bradley was three years of age, the parties obtained an uncontested divorce. At the time of the divorce, the parties agreed to share joint custody of Bradley. The final divorce decree, which incorporated the parties' marital dissolution agreement, provided that Bradley should reside primarily with Gilliam but that Jones should have liberal visitation with Bradley as agreed upon by the parties. Gilliam and Jones devised a schedule allowing Jones to have visitation with Bradley on Tuesdays, Wednesdays, Thursdays, and every other weekend through Monday night. Both parties remarried following their divorce.[1] From 1992 to 1997, Gilliam's new husband David was attending college on a full time basis at Tennessee Tech in Cookeville. Consequently, his contact with Gilliam and Bradley was limited during this period of time. In May of 1997, David graduated from college and began living in Tullahoma with Gilliam and Bradley on a full time basis. Three days after his graduation, David appeared at the home of Jones and handed Jones a letter stating that his Tuesday and Thursday visitation with Bradley was eliminated. Thereafter on June 24, 1997, Jones filed a petition to modify the parties divorce decree, seeking sole custody of Bradley. After hearing the matter, the trial court entered an order granting Jones' petition and Gilliam appeals.

In cases involving child custody, trial courts are afforded a great deal of discretion. *See, e.g., Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. App. 1996); Tenn. Code Ann. § 36-6-101 (a)(2) (Supp. 1998)(providing that the trial court "shall have the widest discretion to order a custody arrangement that is in the best interest of the child"). Consistent with this general principle, our review of the ruling of the trial court in the instant case is *de novo* on the record, accompanied by a presumption of correctness. *See Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); T.R.A.P. 13(d). Under this standard of review, we may only reverse the decision of the trial court if it is contrary to the preponderance of the evidence. *See, e.g., Massengale v. Massengale*, 915 S.W.2d

---

[1]Gilliam married David Gilliam in April of 1995. Jones married Christina Topper in October of 1996.

818, 819 (Tenn. App. 1995).

In order to entertain a petition to modify custody, the trial court must first find that there has been a material change in circumstances occurring subsequent to the court's initial custody determination. *See, e.g., Massengale*, 915 S.W.2d at 819 (citing *Dailey v. Dailey*, 635 S.W.2d 391, 393 (Tenn. App. 1981). If the court finds that there has, in fact, been a material change in circumstances, it then seeks to devise a custody arrangement that is in the best interest of the child. *See, e.g., Varley v. Varley*, 934 S.W.2d 659, 665 (Tenn. App. 1996)(citing *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. App. 1993)); Tenn. Code Ann. § 36-6-106 (Supp. 1998). In determining what is in the best interest of the child, the court will assess the comparative fitness of the parties seeking custody in light of the particular circumstances of the case. *See Ruyle v. Ruyle*, 928 S.W.2d 439, 442 (Tenn. App. 1996); *Matter of Parsons*, 914 S.W.2d 889, 893 (Tenn. App. 1995).

Thus, in the instant case, we must first consider whether there has been a material change in circumstances justifying a modification of the parties' existing custody arrangement. A material change in circumstances may be caused by events occurring subsequent to the initial custody determination or changed conditions that could not be anticipated at the time of the original order. *See Blair v. Badenhope*, 940 S.W.2d 575, 576 (Tenn. App. 1996)(citing *Dalton v. Dalton*, 858 S.W.2d 324, 326 (Tenn. App. 1993)). In the instant case, the parties initially agreed on a joint custody arrangement under which Bradley would reside primarily with Gilliam but would stay with Jones on Tuesdays, Wednesdays, Thursdays, and every other weekend until Monday evening. It appears that this arrangement worked relatively well until May of 1997 when Gilliam, through her new husband, informed Jones that she would no longer allow Bradley to visit him on Tuesdays and Thursdays. Following this incident, the level of cooperation between the parties decreased. The parties no longer communicated directly with each other as they had done in the past. Rather, Gilliam's new husband spoke with Jones on behalf of his wife regarding matters involving Bradley. Both parties appear to concede that, for whatever reason, the custody arrangement that they had agreed to at the time of the divorce was no longer working out. As we have previously held, the fact that a once satisfactory joint custody arrangement has become unworkable can constitute a material change of circumstances. *See Dalton*, 858 S.W.2d at 326 (citing *Dodd v. Dodd*, 737 S.W.2d 286, 290 (Tenn. App. 1987)); *Long v. Croxdale*, No. 03A01-9801-CH-00007, 1998 WL 481976, at *2

n.1 (Tenn. App. Aug. 18, 1998). Thus, because the parties' divorce decree did not anticipate that joint custody would become unworkable, we find that there has been a material change in circumstances allowing the trial court to reexamine its prior custody order.

We next consider whether the evidence preponderates against the trial court's finding that it is in Bradley's best interest to remove him from the custody of Gilliam and place him in the custody of Jones. The criteria for modifying custody decrees are substantially the same criteria upon which custody decrees are originally made. W. Walton Garrett, *Tennessee Divorce, Alimony and Child Custody* § 26-5 (1998 ed.). When determining what is in the child's best interest, the court will consider all relevant factors, including the following:

> (1) The love, affection and emotional ties existing between the parents and child;
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment . . . .
> (4) The stability of the family unit of the parents;
> (5) The mental and physical health of the parents;
> (6) The home, school and community record of the child;
> (7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;
> (8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person . . . .
> (9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and
> (10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.[2]

Tenn. Code Ann. § 36-6-106 (Supp. 1998); *See also Gaskill*, 936 S.W.2d at 630 (providing further examples of factors that may be relevant when making a child custody determination).

---

[2]In 1998, the statute was amended to add the factors contained in subsection ten. *See* 1998 Tenn. Pub. Acts ch. 1003, § 1. We recognize that subsection ten was not a part of the statute when the trial court ruled on Jones' petition to modify custody. We nevertheless discuss the factors contained in subsection ten because we find that they are among the many relevant factors that, even under the prior version of the statute, may be considered when determining what is in the best interest of the child.

We consider each of these statutory factors separately. In the instant case, it is undisputed that there is a great deal of love and affection between Bradley and both Gilliam and Jones. It also appears that Bradley has a loving relationship with both of his step parents. Both Gilliam and Jones are willing and able to provide and care for Bradley. Although Gilliam has been Bradley's primary custodial parent, Gilliam and Jones have shared child rearing responsibilities fairly equally. Both parents have provided a stable home environment for Bradley. However, Gilliam desires to relocate her family to Murfreesboro, away from Bradley's friends and family. There is no indication that either parent has any physical or mental problems affecting Bradley's welfare. The parties agree that Bradley is an exceptional child who has achieved success in both academics and athletics. He appears to be a happy child who has adjusted well to the situation created by Gilliam and Jones. Neither party alleged that the other had abused Bradley in any way. There was evidence, however, that David, Gilliam's new husband, was both mentally and physically abusive toward his former wife.

Finally, the court must consider "[t]he character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child" as well as "[e]ach parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child." Tenn. Code Ann. § 36-6-106(9), (10) (Supp. 1998). With respect to Gilliam's new husband, the trial court found as follows:

> [T]he Court is convinced from a preponderance of the evidence that he is in the process of attempting to alienate this child from his father, trying to assume that role himself by blotting out his name on the report card, listing himself as somebody in an emergency to call, by being spokesman about when he's going to see the child or when the visitation is going to occur. . . .
>
> . . . . the Court is convinced that he attempted to influence a witness in this case, which is dangerous business. I'm convinced that he attempted to influence his ex-wife and those things go to his credibility about leveling with the Court.
>
> Also, I have an impression from the evidence -- a clue from the evidence that he is also in the process of disrupting the relationship that Mr. and Mrs. Jones had before he got into -- the former Mrs. Jones, the child's mother. They had a good relationship for a divorced couple in working this visitation three and four days a

week, but he stopped that. So I'm afraid he's disrupting that relationship.

. . . .

. . . . We had two parents that were working together real well until the stepfather got into the picture. That's what it boils down to.

This finding is well supported by the evidence. At trial, Gilliam's new husband David admitted that he listed himself instead of Jones as Bradley's father on an emergency contact form, that he used white-out to remove Jones' name from one of Bradley's report cards so that Gilliam could sign the card instead of Jones, and that he got very upset when Bradley's baseball coach gave a picture order form to Jones rather than to Gilliam. It was also alleged at trial that, on at least one occasion, David did not allow Jones to speak with Bradley on the telephone and that he told Bradley's baseball coach that the child's last name is Gilliam when in fact his last name is Jones. It was further alleged that, since Gilliam's current husband graduated from college and returned to Tullahoma, Gilliam has stopped providing Jones with information regarding Bradley's school and athletic activities. In light of this testimony, we conclude that the trial court had ample evidence with which it could have found that David has attempted to alienate Bradley from Jones.

This court has previously expressed great concern where one parent has attempted to alienate a child from the child's other parent. In *Wright v. Stovall*, No. 01A01-9701-CV-00040, 1997 WL 607508 (Tenn. App. Oct. 3, 1997), we were presented with facts very similar to those of the case at bar. The parties in *Wright* agreed at the time of their divorce to share joint custody of their minor child. *See id.* at *1. This arrangement worked well until the father remarried and he and his new wife began excluding the mother from the child's life. *See id.* Among other things, the mother complained that the father had removed her name from an emergency contact card at the child's day care center and replaced it with the name of the father's new wife. *See id.* at *2. We first noted that "where one parent has attempted to alienate the affections of the child from the other parent, and has attempted to substitute a third person for the other parent, this mitigates in favor of an award of custody to the other parent, in order to preserve the child's relationship with both parents." *Id.* at *6. We then affirmed the trial court's finding that the father had attempted to alienate the child from his mother and consequently held that, under such circumstances, an award of sole custody to the mother was in the best interest of the child. *See id.* at *7.

Similarly, in ***Varley v. Varley***, 934 S.W.2d 659 (Tenn. App. 1996), we were presented with a case in which the mother had blatantly attempted to alienate the children from their father. ***See id.*** at 667.  In ***Varley***, we commented as follows:

> When loved by both parents, children should be taught to love and respect each parent equally.  This reciprocation, in turn, will garner self respect and a positive self image in the children.  The record in this case lends absolutely no reason as to why the children should not be encouraged to respect and love their father. . . . The record also suggests that the children have been encouraged to develop a positive relationship with [the mother's boyfriend], which is not to be impugned except to the extent that such is detrimental to the children's relationship with their own father.  Finally, the record does not reveal any similar attempt on husband's behalf to dissuade the children from having a loving relationship with their mother.

***Id.*** at 667-68.  We then held that the trial court did not err in awarding custody of the children to their father.  ***See id.*** at 668.

In the instant case, the trial court found that it was in the best interest of Bradley to be in the custody of Jones.  We cannot say that the evidence preponderates against this ruling.  We therefore affirm the order of the trial court awarding sole custody of Bradley to Jones.  Costs of this appeal are charged to Gilliam, for which execution may issue if necessary.

_____
FARMER, J.


_____
CRAWFORD, P.J., W.S. (Concurs)

_____
TOMLIN, Sp. J. (Concurs)