IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 29, 2000

# DENNIS WADE BAILEY v. ZONDRA KAYE SMITH BAILEY

**An Appeal from the Chancery Court for Chester County**
**No. 9262     Joe C. Morris, Chancellor**

---

**No. W1999-01000-COA-R3-CV - Filed October 19, 2000**

---

This is a divorce case involving child custody. Mother and Father are divorced and have one minor child. The trial court granted custody of the minor child to Father. Mother appeals, arguing that the trial court erroneously based its decision on her lack of relationship with her father, the child's maternal grandfather. We affirm.

**Tenn. R. App. P. 3; Judgment of the Trial Court is Affirmed.**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Jesse H. Ford, III, Jackson, Tennessee, for the Appellant Zondra Kaye Smith Bailey.

Jack S. Hinson, Lexington, Tennessee, for the Appellee Dennis Wade Bailey.

### MEMORANDUM OPINION[1]

Plaintiff/Appellee Dennis Wade Bailey ("Father") and Defendant/Appellant Zondra Kaye Smith Bailey ("Mother") were married in 1992. The parties have one child, Brittany Leigh Bailey ("Brittany"), born in 1993. During the marriage, Mother and Father resided in Chester County and both worked for Johnson Controls in Lexington, Tennessee.

The parties separated on January 1, 1998. Mother moved to Hardeman County, and lives in her mother and stepfather's home. Father remained in the marital home in Chester County. On

---

[1]Rule 10 (Rules of the Court of Appeals of Tennessee). -- (b) **Memorandum Opinion.** The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

January 15, 1998, Father filed a complaint for divorce, alleging inappropriate marital conduct and irreconcilable differences. Father sought temporary custody of Brittany, which was granted. The parties later agreed on a shared custody arrangement placing Brittany with each parent for four days at a time. Subsequently, Mother filed a counter-complaint for divorce citing inappropriate marital conduct and seeking exclusive custody of Brittany.

The trial on this matter was heard on August 13, 1998. At the time of trial, Brittany was 5 years old and preparing to begin school.

At the trial, Father testified that he still lives in the marital home, a short distance from his parents' home. He continues to work for Johnson Controls. Father said that his parents have helped care for Brittany since her birth. Father testified that, until the parties' separation, Brittany's regular routine consisted of he or Mother taking Brittany to his parents' home each morning at 4:00 a.m., when they left for work. On days when Father's mother did not care for Brittany, she was taken to daycare. Father has continued that routine since the parties' separation, while Brittany is with him. Father asserted that, if he were awarded custody, Brittany would attend school with children she knows from her daycare and the church he and she regularly attend. Father said that Brittany has a good relationship with both sets of her grandparents and testified that he had taken Brittany to see her maternal grandfather since the parties' separation.

Mother testified that she had been Brittany's primary caregiver since birth and that, prior to the parties' separation, she had provided for all of Brittany's basic needs. She also testified that when Brittany stays with her in the home of her mother and stepfather, Brittany does not have to leave the house as early as when she is with Father. Instead, Mother leaves for work at Johnson Controls at 4:00 a.m. and Mother's step-father drops Brittany off at daycare between 7:00 a.m. and 8:30 a.m. each morning. Mother asserted that, if she were awarded custody, she would leave her current job and obtain other employment which would allow her to be at home when Brittany leaves for school and returns home each day. Mother acknowledged that Brittany has a good relationship with all her grandparents. Mother admitted that she and her father, Brittany's maternal grandfather, do not have a strong relationship and that she had not taken Brittany to see him that year, even though he and Mother live in the same county.

Both parties presented experts who testified that Brittany had a strong attachment to both her parents and both sets of her grandparents. The experts recommended that Brittany experience as little stress as possible beginning school and indicated it would be less traumatic for her to attend school where she knows people. Both experts emphasized the need for flexibility and cooperation between Mother and Father.

The trial court issued its findings and order on August 20, 1998. The trial court noted testimony that Brittany had a strong attachment to both parents and was also attached to her grandparents on both sides of her family. It observed that Father had remained in the marital home and took Brittany to church. The trial court found that Mother had adequate space in her home for Brittany, and found both parents to be good and fit parents. In its order, the trial court also observed

that, "for some unknown reason," Mother did not see her father, Brittany's maternal grandfather, on a regular basis and had not taken Brittany to see her father that year. It noted that Father had taken Brittany to see Mother's father. After reviewing the evidence, the trial court awarded custody to Father, finding it was not in Brittany's best interest to be removed from the "only home she knows and the community where she now lives with her father and is attended by her grandparents." From this decision, Mother now appeals.

On appeal, Mother argues that the trial court placed undue emphasis on Brittany's relationship with extended family members in making its decision. She argues that her lack of relationship with her father, Brittany's maternal grandfather, was the basis for the trial court's decision to grant custody of Brittany to Father. Mother contends that the trial court, in effect, penalized her for not having a regular relationship with her father, making the unsupported assumption that the grandparent/grandchild relationship would be beneficial to Brittany. Mother asserts that her decision not to see her father on a regular basis was a parenting decision and should not be disturbed without a threshold finding of substantial harm to Brittany as required by the Tennessee Supreme Court's holding in *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993).

Mother also argues that the trial court disregarded the fact that, because of Father's work schedule, Brittany will be awakened at 4:00 a.m. each work day. Mother testified that Brittany would not have to awaken as early if she were awarded custody. Mother notes her testimony at trial that, if she were awarded custody, she would leave Johnson Controls and obtain employment which would allow her to see Brittany off to school in the morning and pick Brittany up after school or be at home when she got off the bus.

Our review of this case is governed by Rule 13(d) of the Tennessee Rules of Appellate Procedure, which provides that the review of findings of fact by the trial court shall be *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the factual findings, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

In child custody and visitation cases, the welfare and best interest of the child are the paramount concerns. *See Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. App. 1997); Tenn. Code Ann. § 36-6-106 (1996). The determination of the child's best interest must turn on the particular facts of each case. *See Taylor v. Taylor*, 849 S.W.2d 319, 326 (Tenn. 1993); *In re Parsons*, 914 S.W.2d 889, 893 (Tenn. Ct. App. 1995). The Court utilizes the comparative fitness approach to determine the party to whom custody should be awarded. *Bah v. Bah*, 668, S.W.2d 663, 666 (Tenn. Ct. App. 1983). The factors to be considered in making this decision are set forth in Tennessee Code Annotated § 36-6-106 (Supp. 1999). In child custody cases, the trial court's decision is to be accorded great weight, reversed on appeal only where there is "a palpable abuse of discretion, or a judgment against the great weight of the evidence." *See Herrera v. Herrera*, 944 S.W.2d 379, 386 (Tenn. Ct. App. 1996) (quoting *Cecil v. State ex. rel. Cecil*, 192 Tenn. 74, 237 S.W.2d 558, 559 (1951).

In this case, Mother cites the Tennessee Supreme Court's decision in *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993). She argues that the trial court, by noting in its custody decision the fact that Mother does not see her father on a regular basis, is essentially "second guessing" her parenting decision and makes "an unquestioning judicial assumption" that Brittany would benefit from a relationship with Mother's father. *See Hawk*, 855 S.W.2d at 581. Mother asserts that the trial court may intervene in her parenting decision only where there is proof that Mother's decision would "substantially harm the child." *Id.* at 577-79.

*Hawk* involved grandparents attempting to assert visitation rights with their grandchildren, contrary to the parents' decision not to permit the grandparents to see the grandchildren. *Id.* at 576. In *Hawk*, the Court held that a court may not interfere with such a parenting decision absent a showing of significant harm to the child from the decision. *Hawk*, 855 S.W.2d at 581. The Court asserted that it sought to avoid "an unquestioning judicial assumption that grandparent-grandchild relationships always benefit children," noting the necessary threshold finding of harm before the court can interfere with the parents' decision . *Id.* at 581.

In this case, the trial court did not require visitation with Mother's father against Mother's wishes. Rather, the trial court considered Mother's lack of a regular relationship with her father in light of Brittany's attachment to him. *Hawk* does not mandate a threshold finding of substantial harm before the trial court can consider the minor child's relationship with grandparents as one of the factors in its comparative fitness analysis.

Furthermore, Mother's lack of a regular relationship with her father was only one of many factors considered by the trial court in its analysis. The trial court noted several factors it weighed in its analysis, including the fact that Father continues to reside in the marital home and that Father's mother had cared for Brittany on a daily basis since birth and continues to do so. In addition, the trial court considered the fact that, if Father were granted custody, Brittany would attend school with children she had grown up with in the church and community.

Mother also argues that the trial court ignored the fact that awarding custody to Father meant that Brittany would be required to wake at 4:00 a.m. each work day to go to Father's parents' house. We acknowledge that this is considerable hardship to Brittany. However, considering the fact that this has been the routine for Brittany for most of her life, we cannot conclude that this is sufficient reason to reverse the trial court's decision.

In sum, we find that the trial court did not err in considering Mother's lack of a regular relationship with her father in making its custody decision. Viewing the evidence as a whole, we cannot conclude that the evidence preponderates against the trial court's award of custody to Father.

The decision of the trial court is affirmed. Costs are taxed to the Appellant, Zondra Kaye Smith Bailey and her surety, for which execution may issue if necessary.

_____
HOLLY K. LILLARD, JUDGE