# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### November 17, 2003 Session

## MARIA LOUISE BERNHARD KOLLASCH  KRAHN v. TODD MICHAEL KOLLASCH

**A Direct Appeal from the Circuit Court for Shelby County**
**No. CT-002258     The Honorable George Brown, Judge**

---

**No. W2002-02931-COA-R3-CV - Filed December 30, 2003**

---

Mother and Father were declared divorced by the trial court pursuant to an absolute decree of divorce that incorporated, by reference, a Permanent Parenting Plan designating Mother as the primary residential parent to the parties' minor child. Father appeals the parenting plan's designation of Mother as the primary residential parent.  We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER,  J., joined.

Linda L. Holmes, Memphis, For Appellant, Todd Michael Kollasch

David E. Caywood, Holly J. Renken, Memphis, For Appellee, Maria Kollasch Krahn

### OPINION

Appellant Todd Michael Kollasch ("Father") and appellee, Maria Louise Bernhard Kollasch Krahn ("Mother"), were married on July 23, 1994 in Johnson County, Iowa.  The parties are parents to one minor daughter, born March 12, 1997.

Both Mother and Father were students at the time of their daughter's birth.  Mother graduated from podiatry school in 1998.  While in Iowa, Father completed his degree in veterinary medicine. In June 1998, the parties moved to Pittsburgh, Pennsylvania, where Mother began a one-year residency program and upon completion of the program worked for one year in private practice. During this time, Father worked in an emergency clinic.  The parties' minor child was placed in a day care while the parties were working.  Mother contends that she was the primary caregiver for her daughter during this time; however, the record indicates that both parents were actively involved in the care and raising of their minor child.

In July 2000, Mother moved to Memphis, Tennessee to begin a surgical residency. Their daughter remained in Pittsburgh with Father for approximately one month. Their child spent the month of August 2000 in Iowa, splitting time with both her paternal and maternal grandparents. In September 2000, the child moved to Memphis to live with Mother. Father joined Mother and daughter in Memphis in October 2000.

Upon his arrival in Memphis, Father worked in a veterinary clinic. Father appears to keep a traditional work schedule, his clinic duties requiring him to work occasional Saturdays. Mother completed her surgical residency in June 2001. The child was placed in day care during the week while Mother and Father worked.

In December 2000, Mother began an extramarital affair with her now-husband, Dr. Timothy Krahn ("Dr. Krahn"). A few months later, in February 2001, Mother informed Father that she wanted a divorce, and the parties separated. In May 2001, Mother broke the news to Father that she was pregnant with Dr. Krahn's child. Soon thereafter, Mother moved out of the parties' marital apartment, leaving the minor child in Father's primary care. Mother gave birth to a second daughter on November 29, 2001. Mother and Dr. Krahn were married sometime thereafter.

On April 10, 2001, Mother filed a Complaint for Divorce against Father alleging as grounds irreconcilable differences and inappropriate marital conduct. Mother's complaint additionally sought temporary and permanent custody of the parties' daughter.

Father filed an Answer and Counter Complaint on June 11, 2001, acknowledging the existence of irreconcilable differences, but denying Mother's allegations of inappropriate marital conduct. Father's Counter Complaint sought an absolute divorce on grounds of inappropriate marital conduct, adultery, and irreconcilable differences. Father also sought sole custody of the parties' daughter, stating "[t]hat it would be in the best interest of the parties' minor child to be in the sole custody and control of the Defendant/Counter-Plaintiff with reasonable visitation for the Plaintiff/Counter Defendant."

On June 28, 2001, Father filed a Petition for Primary Residential Parent Pendente Lite requesting the court to designate him as the primary residential parent for the parties' minor child. Father's petition noted that the child was currently in his care and custody, and averred that "[i]t is in the minor child's best interest that she remain with her father in the marital home where she has a stable, established routine that included attending day care while the parties worked during the day." This same day, Mother filed a motion pursuant to T.C.A. § 36-6-403(a)(2), requesting an expedited hearing to establish a temporary parenting plan. Mother additionally filed an Answer and "Counter-Petition Requesting Status of Primary Residential Parent Pending Expedited Hearing." By Order entered July 25, 2001, the trial court directed that the minor child should remain in Father's care and custody, continuing to reside in the parties' marital home. The court's order further directed the parties to negotiate a visitation schedule and a temporary parenting plan.

A copy of the Temporary Parenting Plan proposed by Father is included in the record on appeal. The plan states that it was reached by a trial court hearing, although the date of the hearing is not provided. It is undisputed that Mother did not agree to the provisions of the plan. Father's plan was adopted and approved by the trial court on July 25, 2001, and the plan provided that Mother was entitled to bi-weekly visitation with her daughter, beginning at 6:00 P.M. on Friday and ending at 6:00 P.M. on the following Sunday. Father's plan also defined the parties' visitation/parenting time schedule for holidays, birthdays, and vacation periods.

On August 21, 2001, Mother filed a motion to alter or amend the trial court's July 25, 2001 Order pursuant to Tenn. R. Civ. P. 59.04. Mother's motion alleged that the trial court improperly approved Father's proposed parenting plan where, "[o]n the morning of July 25, 2001, counsel for Father approached the Court ex parte to enter the Order on Petition for Primary Residential Parent Pendente Lite and Parenting Plan." Mother maintained that "the proper procedure would have been to either order the parties into dispute resolution or to set a date for an expedited hearing," and thereby moved the court to vacate the parenting plan approved by the court on July 25, 2001, and order the parties into dispute resolution or, alternatively, "hold an expedited hearing for the purpose of establishing a Temporary Parenting Plan in accordance with T.C.A. § 36-6-403."

On November 2, 2001, Father filed a Motion for Injunction, seeking to enjoin Mother from allowing the parties' minor child to have any contact or communication with Dr. Krahn. Approximately one month later, on December 3, 2001, the trial court entered an Order denying Father's Motion for injunction. The court's order additionally determined that the "parties should divide visitation time with the minor child equally during the time minor child is not enrolled in daycare until the first part of January 2002." On December 5, 2001, a visitation/custody calendar for the month of December 2001 was filed with the trial court.

On January 11, 2002, Mother filed a "Petition for Immediate Determination of Parenting Time Pending Trial." Pursuant to this motion, Mother asked the court to grant immediate custody of the parties' minor child to Mother, asserting Father's "willful violation" of the court-ordered visitation/parenting time schedule. Mother's motion sought to limit Father's "parenting time" to 5:00 P.M. Friday through 5:00 P.M. Sunday, every weekend. Upon consideration of this motion, the trial court entered an Order vacating its Order of December 5, 2001, and setting Mother's visitation rights with minor child for "alternating weekends from Friday evening at 5:00 p.m. until Sunday evening at 6:00 p.m., the first weekend beginning January 18, 2002."

A hearing on Mother's Rule 59 motion was held on February 8, 2002. The court reserved ruling on the motion until the divorce hearing set for later in the month. A hearing on the parties' respective complaints for divorce was held on February 27, 2002. On March 7, 2002, the trial court entered an Order denying Mother's complaint and granting an absolute divorce in favor of Father, citing as grounds Mother's inappropriate marital conduct. The court's order reserved "[a]ll matters

pertaining to economic issues and child issues" for trial. Several days later, on March 11, 2002, the trial court entered an order significantly expanding Mother's parenting time.

A hearing on the remaining economic and child custody issues raised in the parties' respective complaints for divorce was held on May 13 and 14, 2002. The trial court made the following findings of fact and rulings from the bench:

> [Mother and Dr. Krahn] had a very meretricious relationship, and after the divorce was granted, they married. And they came into court and assumed responsibility, one, for their actions and assumed responsibility for all other matters that are collateral thereto. So with regard to those acts, the Court is satisfied that in terms of being the appropriate role model – role model for [minor child], the Court is satisfied that the mother, as well as the father, are appropriate, positive role models not withstanding any other actions or acts that they may have committed heretofore.

> *****************************************************

> [Minor child], in my opinion, would be all right if either of the parents – the natural parents had custody of this child, but the Court is of the opinion that of the two, that the mother in this instance can serve the best interests of [minor child] because she is a young girl five years of age, because the mother at this point in time has the ability and has chosen to be a parent and stay at home and have that as her primary responsibility and forgo, at least at this time, a career that she has been – she is trained for and prepared for.

The trial judge gave significant consideration to Mother's desire and choice to act as a stay-at-home parent for minor child, expressing his belief that "[minor child] will benefit greatly by those set of circumstances." Rather than awarding Mother immediate primary custody of minor child, the court specified that a "transition period" should be established whereby custody was gradually shifted from Father to Mother.

On June 19, 2002, a Consent Order was entered scheduling the parties' parenting time for the months of June, July, and August 2002. The court's order stated that the "transition period" for the minor child would end on August 19, 2002, and that Mother would henceforth take over the role of primary residential parent.

A Final Decree of Absolute Divorce was entered on November 5, 2002. The court's decree, *inter alia*, incorporated by reference Mother's proposed Permanent Parenting Plan designating her as primary residential parent. Mother's plan provided, in part, that Father would have visitation with

his daughter from Friday afternoon until Sunday evening, every other week. The plan further specified that Father would have additional visitation with his daughter on Wednesday afternoons until Thursday morning. A separate schedule was set out for holidays, birthdays, and vacation periods.

On December 2, 2002, Father filed a Notice of Appeal of the trial court's November 5, 2002 order. Father now presents for review the sole issue of "[w]hether the trial court properly adopted a parenting plan designating [Mother] as the primary residential parent."

A child custody determination is controlled by T.C.A. § 36-6-106 (2001) which provides in pertinent part:

> (a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:
>
> (1) The love, affection and emotional ties existing between the parents and child;
>
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
>
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that where there is a finding, under § 36-6-106(8), of child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a non-perpetrating parent has relocated in order to flee the perpetrating parent, that such relocation shall not weigh against an award of custody;
>
> (4) The stability of the family unit of the parents;
>
> (5) The mental and physical health of the parents;
>
> (6) The home, school and community record of the child;
>
> (7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon

request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that where there are allegations that one (1) parent has committed child abuse, [as defined in § 39-15-401 or § 39-15-402], or child sexual abuse, [as defined in § 37-1-602], against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected thereto. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

In child custody and visitation cases, the welfare and best interest of the child are the paramount concerns. ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997); T.C.A. § 36-6-106 (2001). The determination of the child's best interest must turn on the particular facts of each case. ***Taylor v. Taylor***, 849 S.W.2d 319, 326 (Tenn. 1993); ***In re Parsons***, 914 S.W.2d 889, 893 (Tenn. Ct. App. 1995). In ***Bah v. Bah***, 668 S.W.2d 663 (Tenn. Ct. App. 1983), the Court established some guidelines for making the determination of the child's best interest:

> We adopt what we believe is a common sense approach to custody, one which we will call the doctrine of "comparative fitness." The paramount concern in child custody cases is the welfare and best interest of the child. ***Mollish v. Mollish***, 494 S.W.2d 145, 151 (Tenn. Ct. App. 1972). There are literally thousands of things that must be taken into consideration in the lives of young children, ***Smith v. Smith***, 188 Tenn. 430, 437, 220 S.W.2d 627, 630 (1949), and these factors must be reviewed on a comparative approach:
>
> > Fitness for custodial responsibilities is ***largely a comparative matter***. No human being is deemed

> perfect, hence no human can be deemed a perfectly fit custodian. Necessarily, therefore, the courts must determine which of two or more available custodians is more or less fit than others.
>
> *Edwards v. Edwards*, 501 S.W.2d 283, 290-91 (Tenn. Ct. App. 1973) (emphasis supplied).

*Bah*, 668 S.W.2d at 666.

The presumption of correctness applicable to a trial court's findings of fact pursuant to Tenn. R. App. P. 13(d) applies in child custody cases. *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Whitaker*, 957 S.W.2d at 838.

Father argues that the trial court erred in adopting a parenting plan designating Mother as primary residential parent on grounds that the trial court failed to properly consider Mother's extramarital affair as evidence of her inability to provide a stable home environment and act as an appropriate role model for the child. Father also argues that the trial court failed to give proper weight to Father's role as primary caregiver to minor child for the year following Mother's exit from the marital residence, the importance of continuity in the child's home environment, and the parties' respective employment schedules. Father finally notes that the trial court improperly based its ruling in favor of Mother as primary residential parent on the minor child's gender and the fact that she was only five years old at the time of the divorce.

Upon our review of the record, the evidence does not preponderate against the trial court's ruling and we find no evidence that the trial court abused its discretion in designating Mother as primary residential parent. The trial court adequately considered and weighed Mother's involvement in an extramarital affair, and apparently concluded that Mother had atoned for her past indiscretions. With regard to continuity of home environment, we note that Mother was a primary caregiver for minor child until her exit from the parties' marital residence in June 2001. From June 2001 through trial in this matter, Mother maintained consistent visitation with minor child, said visitation being increased by court order on two separate occasions. Finally, upon review of the trial judge's comments and rulings from the bench at trial, we find no evidence that the trial court improperly based its decision to award Mother primary custody of the parties' daughter upon the age or gender of the child. Rather, as recognized by Father, the trial court's ruling was primarily influenced by Mother's stated intent to be a stay-at-home parent for minor child. Because we find that the trial court properly considered all of the relevant factors set forth in T.C.A. § 36-6-106, which appeared to be fairly equal between the parties, the parties' respective work schedules is an appropriate factor for consideration.

The trial court's Order of November 5, 2002 designating Mother as primary residential parent is affirmed.  Costs of this appeal are assessed against appellant, Todd Michael Kollasch, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.