IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
On-Briefs June 1, 2005

## CHRISTINE PAMELA SCHOOF GOFORTH v. TERRY JAMES GOFORTH

**A Direct Appeal from the Chancery Court for Tipton County**
**No. 21,721      The Honorable Martha B. Brasfield, Chancellor**

---

**No. W2004-02936-COA-R3-CV - Filed July 12, 2005**

---

This is an appeal from a final decree of divorce as it concerns custody of the parties' children. The trial court awarded primary residential custody to Father and provided for visitation with Mother. Mother appeals asserting that, pursuant to the factors set out in T.C.A. §36-6-106, she should have been named primary residential parent. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Jeffery L. Stimpson of Munford, Tennessee for Appellant, Christine Pamela Schoof Goforth

No appearance by Appellee

### OPINION

Christine Pamela Schoof Goforth ("Mother," or "Appellant") and Terry James Goforth ("Father," or "Appellee") were married on November 5, 1988. Two children, Terry James Goforth, Jr. (d.o.b 11/21/90) and Ryan Andrew Goforth (d.o.b. 9/16/93), were born to the marriage.

The parties separated on March 15, 2002 and Ms. Goforth filed a "Complaint for Divorce" on February 12, 2004. A proposed "Temporary Parenting Plan" was also filed by Ms. Goforth on February 12, 2004. This proposed plan awards custody of the children to Ms. Goforth during the week and awards alternate weekend visitation to Mr. Goforth. Under "Other Provisions, Restrictions or Modifications," the proposed plan requires Mr. Goforth to "exercise his parenting time with the children in the home of his parents or other family members until he makes necessary repairs to his house to have a safe environment for the children to reside."

On March 11, 2004, Mr. Goforth filed an "Answer and Counter Complaint for Divorce," in which he avers that he is the proper person to be named primary residential parent of the parties' minor children and that Ms. Goforth should have supervised visitation privileges with the children "due to her living arrangements with a man to whom she is not married." On March 11, 2004, Mr. Goforth also filed a "Proposed Temporary Parenting Plan" which awarded custody of the children to Mr. Goforth during the week and allowed Ms. Goforth supervised visitation on alternate weekends.

On April 22, 2004, the trial court entered its "Order on Temporary Parenting Plan." This Order reads, in relevant part, as follows:

> 1. Father shall be entitled to the immediate return of the children and shall be the primary residential parent, pendente lite.
>
> \*                                        \*                                        \*
>
> 4. Mother shall have the standard visitation with the minor children and her male friend shall not be present during periods of visitation.
>
> 5. During the months the children are not in school, the parties will alternate weeks with the children.

The issue of Ms. Goforth's child support obligation was reserved pending a hearing. Ms. Goforth filed her "Answer to Counter-Complaint" on September 30, 2004.

A non-jury trial was held on September 30, 2004. On November 17, 2004, the trial court entered its "Final Decree of Divorce," which reads, in pertinent part, as follows:

> 2. The parties are the parents of two (2) minor children.... Defendant, Terry James Goforth, shall be the primary residential parent for the minor children in accordance with the provisions of the Permanent Parenting Plan...that is incorporated herein by reference. Plaintiff, Christine Pamela Schoof Goforth, shall have the non-residential parenting time with the minor children and shall provide the support set forth in the Permanent Parenting Plan.

The "Permanent Parenting Plan,"which was filed on November 17, 2004 and incorporated by reference into the Final Decree of Divorce, orders Ms. Goforth to pay child support in the amount of $350.00 per month.

Ms. Goforth appeals from the "Final Decree of Divorce" and raises the following issue for review as stated in her brief:[1]

> Whether the trial court abused its discretion in designating the Appellee as the primary residential parent of the minor children of the parties and awarding the Appellant parenting time on alternating weekends, holidays and during the summer.

Since this case was tried by a court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d).

In child custody and visitation cases, the welfare and best interests of the child are paramount concerns. *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App.1997); T.C.A. § 36-6-106 (2001). The determination of the child's best interest must turn on the particular facts of each case. *Taylor v. Taylor*, 849 S.W.2d 319, 326 (Tenn.1993); *In re Parsons*, 914 S.W.2d 889, 893 (Tenn. Ct. App.1995). In *Bah v. Bah*, 668 S.W.2d 663 (Tenn. Ct. App.1983), the Court established some guidelines for making the determination of the child's best interest:

> We adopt what we believe is a common sense approach to custody, one which we will call the doctrine of "comparative fitness." The paramount concern in child custody cases is the welfare and best interest of the child. *Mollish v. Mollish*, 494 S.W.2d 145, 151 (Tenn. Ct. App.1972). There are literally thousands of things that must be taken into consideration in the lives of young children, *Smith v. Smith*, 188 Tenn. 430, 437, 220 S.W.2d 627, 630 (1949), and these factors must be reviewed on a comparative approach:
>
> Fitness for custodial responsibilities is largely a comparative matter. No human being is deemed perfect, hence no human can be deemed a perfectly fit custodian. Necessarily, therefore, the courts must determine which of two or more available custodians is more or less fit than others. *Edwards v. Edwards*, 501 S.W.2d 283, 290-91 (Tenn.Ct.App.1973).

*Bah*, 668 S.W.2d at 666.

The trial court must also consider factors set forth in T.C.A. § 36-6-106 (2001), which provides, in relevant part, as follows:

---

[1] Mr. Goforth filed no brief in this appeal and, by Order of May 18, 2005, this Court ruled that "...this matter is submitted for decision on the record, Appellant's brief...."

The court shall consider all relevant factors including the following where applicable:

(1) The love, affection and emotional ties existing between the parents and child;

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that where there is a finding, under § 36-6-106(8), of child abuse, as defined in § 39- 15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a non-perpetrating parent has relocated in order to flee the perpetrating parent, that such relocation shall not weigh against an award of custody;

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that where there are allegations that one (1) parent has committed child abuse, [as defined in § 39-15-401 or § 39- 15-402], or child sexual abuse, [as defined in § 37-1-602], against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of fact connected thereto. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

The presumption of correctness applicable to a trial court's findings of fact pursuant to Tenn. R.App. P. 13(d), *see supra*, applies in child custody cases. *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn.1984); *Whitaker*, 957 S.W.2d at 838. We now turn to the specific facts in this case and view them in light of the best interests of these children and the criteria set forth in T.C.A. §36-6-106, *supra*.

Concerning the love, affection and emotional ties that exist between the parents and children in this case, it is clear from the in chambers discussion with the two boys that they both have strong emotional bonds with both parents. Likewise, it is clear from the record that both parties love their children. Ms. Goforth, however, has been less than adamant about exercising her visitation with the children. Although she has not been vigilant in insisting that she be allowed her court-ordered time with the children, Mr. Goforth has not been forthcoming in allowing Ms. Goforth time with the children. Despite the fact that neither parent has been model in pursuing or allowing visitation, the children have developed significant emotional ties with both parents.

Although Mr. Goforth makes $20.83 an hour as a diesel mechanic and Ms. Goforth makes between $10 and $11 an hour as a laboratory technician, nothing in the record indicates that either parent has failed to provide these children with food, clothing, medical care and other necessaries.

In terms of continuity in these childrens' lives, they have lived with Mr. Goforth in his home in Tipton County for the majority of the time before and since their parents' separation. The older child, T.J., expressed a preference for staying in his current school and a preference for his friends living near his Father's home as opposed to those he had made at his Mother's home in Southaven. Consequently, in terms of continuity and stability, it appears that the boys are better off in their current arrangement with Mr. Goforth as the primary residential parent.

Concerning the stability of the family unit of each parent, it appears from the record that this factor weighs in favor of Mr. Goforth. The record indicates that Ms. Goforth engaged in extramarital affairs and then, following her separation from Mr. Goforth, lived with a man to whom she was not married. Although Ms. Goforth testified that this man does not currently reside with her in her apartment in Southaven, she does admit that he had lived with at her current address at one point.

As to the mental health of the parties, the record gives rise to some concern about Ms. Goforth. Ms. Goforth admits that she brandished and actually fired a weapon through a wall in the family home while she was arguing with Mr. Goforth during the marriage. The children were present at the time of this incident and Ms. Goforth admits that she knew her children were sleeping in the house when she fired the weapon. There is also some evidence in the record to suggest that Ms. Goforth has struck Mr. Goforth in the presence of the children. Consequently, this criterion weighs strongly in favor of Mr. Goforth.

Neither of the children indicates a strong preference to live with either parent. Rather, both boys stated that they wanted to spend equal time (or as much time as possible) with both parents.

While the Permanent Parenting Plan names Mr. Goforth as primary residential parent, it gives substantial parenting time to both parties. Given the respective work schedules of these parties, the childrens' schedules, and the specific facts of this case as discussed above, we cannot conclude that the trial court abused its discretion in naming Mr. Goforth as the primary residential parent or in dividing the parenting time as set out in the Permanent Parenting Plan. From the record before us, it appears to this Court that the arrangement outlined in the Permanent Parenting Plan, as incorporated into the Final Decree of Divorce, represents the best scenario under the circumstances of this case and is, consequently, in the best interests of these children.

For the foregoing reasons, we affirm the Final Decree of Divorce. Costs of this appeal are assessed to the Appellant, Christine Pamela Schoof Goforth, and her surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.