IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 20, 2006  Session

RICHARD LONG v. HOLLI COLLEEN HARTSELL HARBIN

**Appeal from the Juvenile Court for Jefferson County**
**No. 3832      Benjamin Strand, Jr., Judge**

---

**No. E2006-00336-COA-R3-JV - FILED OCTOBER 4, 2006**

---

In this post-decree child custody case, the trial court changed custody from the mother to the father after finding, among other things, that the mother had smoked marijuana while operating a motor vehicle in which the child was a passenger.  Based upon this finding and evidence that the change of custody was in the best interest of the child, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

William A. Mynatt, Jr., Knoxville, Tennessee, for the Appellant, Holli Colleen Hartsell Harbin.

Rebecca D. Slone, Dandridge, Tennessee, for the Appellee, Richard Long.

**OPINION**

*I. Background*

The parties, who were never married to each other, are the biological parents of Ricki Logan Taylor Hartsell ("Logan"), born May 21, 1996.

An agreed order entered *nunc pro tunc* to September 16, 1997 established that  Richard Long ("Father") is Logan's father and provided that Logan remain in the custody of her mother, Holli Colleen Hartsell ("Mother").  The order further provided that Father have specified visitation and that he pay temporary child support along with taxes, insurance premiums, and monthly installments due on the mobile home where Mother and Logan then resided.  The record shows that since Logan's birth, Father has provided Mother and Logan financial assistance in addition to that required by the agreed order.

In September of 2000, Mother married Brandon Harbin, and gave birth to their son in December of 2003. Mr. Harbin and Mother were separated at the time of trial, and Mother continued to care for their child. Father married in May of 2005, and remained married at the time of trial.

In July of 2005, Father filed a petition to modify custody, alleging that there had been a material change in circumstances in that Mother's environment had become such that it was not conducive to the child's best interest to be in her primary care. The petition also alleged that Mother "continues to interfere with the amount of parenting time the father attempts to enjoy with his child." Based upon these allegations, the petition requested that Father be made Logan's primary caregiver or, alternatively, that he be awarded significantly more parenting time. Mother filed a response that denied the allegations of the petition and requested that the petition be dismissed. The matter came on for trial in November of 2005, and, as set forth in its subsequent order of December 12, 2005, the trial court ruled that there had been a material change of circumstances and that it was in the child's best interest that custody be changed to Father and that Mother be awarded specified rights of visitation. Thereafter, Mother filed this appeal.

## II. Issues

The issues we review in this case are restated as follows:

1) Whether the trial court erred in finding that there was a material change in circumstances supporting a modification of custody.

2) Whether the trial court erred in finding that a modification of custody was in the child's best interest.

## III. Standard of Review

In a non-jury case such as this one, we review the record *de novo* with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. *Seals v. England/Corsair Upholstery Mfg. Co.,* 984 S.W.2d 912, 915 (Tenn. 1999). The trial court's conclusions of law are accorded no presumption of correctness. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

Trial courts are vested with wide discretion in matters involving custody of children. *Edwards v. Edwards,* 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973). Accordingly, a trial court's decision regarding custody or visitation should be set aside only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge v. Eldridge,* 42 S.W.3d 82, 88 (Tenn. 2001).

We begin our review by reaffirming the premise that custody and visitation decisions are among the most important decisions that courts make. *Steen v. Steen,* 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001); *Adelsperger v. Adelsperger,* 970 S.W.2d 482, 484 (Tenn. Ct. App. 1997). Promoting the child's welfare by creating an environment that promotes a nurturing relationship with both parents is the chief purpose in custody decisions. *Aaby v. Strange,* 924 S.W.2d 623, 629 (Tenn. 1996). Because children are more likely to thrive in a stable environment, the courts favor existing custody arrangements. *Id.* at 627; *Taylor v. Taylor,* 849 S.W.2d 319, 332 (Tenn. 1993); *Hoalcraft v. Smithson,* 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999). A custody decision, once made and implemented, is considered *res judicata* upon the facts in existence or reasonably foreseeable when the decision was made. *Young v. Smith,* 246 S.W.2d 93, 95 (Tenn. 1952); *Steen,* 61 S.W.3d at 327; *Solima v. Solima,* 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998).

The governing statute in a case such as this one, T.C.A § 36-6-101(B), provides that in cases wherein a party seeks to modify an existing custody arrangement, the threshold issue is whether a material change in circumstances has occurred since the initial custody determination:

> (B) If the issue before the court is a modification of the court's prior
>
> decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.
> (i) In each contested case, the court shall make such a finding as to the reason and the facts that constitute the basis for the custody determination.

T.C.A. § 36-6-101(B).

We recognize that the circumstances of children and their parents change – children grow older, their needs change, one or both parties remarry. But not all changes in the circumstances of the parties and the child warrant a change in custody. There are no hard and fast rules for when there has been a change of circumstance sufficient to justify a change in custody. *Cranston v. Combs,* 106 S.W.3d 641, 644 (Tenn. 2003). A court's decision with regard to modification of custody is contingent upon the circumstances presented, and the court should consider whether:

1) the change occurred after the entry of the order sought to be modified,
2) the changed circumstances were not reasonably anticipated when the underlying decree was entered, and
3) the change is one that affects the child's well-being in a meaningful way.

*Kendrick v. Shoemake,* 90 S.W.3d at 570; *Blair v. Badenhope,* 77 S.W.3d 137 (Tenn. 2002); *Cranston,* 106 S.W.3d at 644. Custody decisions are not intended, and should not be designed, to reward parents for prior virtuous conduct, nor to punish them for their human frailties or past missteps. *Oliver v. Oliver,* No. M2002-02880-COA-R3-CV, 2004 WL 892536 at *2 (Tenn. Ct. App. M.S., Apr. 26, 2004); *Kesterson,* 172 S.W.3d at 561; *Earls v. Earls,* 42 S.W.3d 877, 885 (Tenn. Ct. App. 2000).

The party seeking to change an existing custody arrangement has the burden of proving that there has been a material change of circumstances. T.C.A. § 36-6-101(B). If the person seeking the change of custody cannot demonstrate that the child's circumstances have changed in some material way, the trial court should not reexamine the comparative fitness of the parents, *Caudill v. Foley,* 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999), or engage in a "best interests of the child" analysis. In the absence of proof of a material change in the child's circumstances, the trial court should not change custody. *Hoalcraft,* 19 S.W.3d at 828.

## IV. Material Change of Circumstances

The first issue we address is whether the trial court properly found that there was a material change in circumstances in this case that warranted a change in custody.

At the conclusion of trial, the trial court indicated various findings in support of its decision to change custody to Father. These included findings that Mother had used marijuana while operating a vehicle in which Logan was a passenger, thereby putting the child in danger; that Mother was more concerned about "going out to ... some of the local night spots in Newport, rather than being home taking care of the children;" that Mother found it more important to go to Florida for a vacation than to stay home and make money to care for her children; that Mother admitted to participating in a wet t-shirt contest and to being out in bars at night; that Mother has failed to find employment; that Mother's home was poorly kept; and that Logan was absent from school for 22 days of the school year. While we do not necessarily agree that each of these findings constitutes a material change of circumstances warranting a modification of custody, it is our determination that the trial court's findings with regard to Mother's use of marijuana is sufficient to support its ruling.

In regard to its findings relative to Mother's marijuana use while operating a motor vehicle, the trial court referenced the testimony of Lisa McMahann who testified, *inter alia*, as follows:

> Q All right. And particularly, ma'am, have you seen [Mother] with her children at the Timeout Deli where you work?
>
> A Yes. She had two little girls in the back of the car when she came into the store. And I was working the cash register. She walked past the register to go to the drink thing and she smelled a lot of marijuana.

-4-

· · ·

Q Okay. Did she appear to be under the influence?

A Yes.  When she come – got her drink and came to the counter, her eyes was red and she smelled real strongly of marijuana.

Q All right.  And she had children with her on that occasion?

A She had two girls in the back seat of the car.

· · ·

Q All right.  Now, has Mrs. Harbin has been dating someone that you know?

A My son's roommate.

Q What's his name?

A Trevor.

· · ·

Q Has she come over to the home where this gentleman lives?

A Yes.

Q Have you seen her at that particular residence?

A I sat on the porch one day when she came to pick Trevor up in a white car.

Q Okay.  And did she have children with her on that occasion?

A She had two little girls in the back seat of the car and she was smoking pot when she pulled up in the driveway.

Q Did you personally observe that?

A I watched her do that when she pulled in the driveway . Trevor was in the house.

Q Why do you think it was marijuana?

A Because I watched her roll it in the front seat of [the] car while Trevor was coming out to get in the car with her.

. . .

Q How far away from the car were you when you were sitting on the stoop and saw her pull up to pick Trevor up?

A From me to you, if not a little closer.

Q Were you above or below the level of the window?

A Above. That's how I was able to see what she was doing in the car.

Q This is three or four in the afternoon?

A Mmm-hmm.

Q It's your testimony, she was rolling a marijuana cigarette?

. . .

A Yes.

Q So describe what you saw.

A I saw her on the armrest of the car, turned and had a paper out, and put stuff in a paper, and rolled it up, and bent down to lick it.

THE COURT: How could you tell that was marijuana?

THE WITNESS: Well, she had a pack of cigarettes laying there beside it and on the seat, so, you know. And I knew that she had smoked before because at the Midnight Rodeo, she stepped outside with some of her friends and was around the side of the building smoking. So I knew what that was. Plus, you know, when Trevor opened the car door, you could smell it where she had already been.

While Ms. McMahan's testimony does not identify Logan by name as one of the two children in Mother's care on the two occasions described above, the trial court's implicit finding that one of the children was Logan is supported by other evidence in the record. Further, Mother admitted to having used marijuana four or five months before trial, and her husband also testified that she has used marijuana while caring for her children and that he has seen Mother smoking marijuana in front

of them.  Also, Father's wife testified that she was attending a school function with Mother and Logan and that when she went to Mother's car to retrieve a children's car seat, she saw a marijuana cigarette lying on the driver's seat.

Possession of marijuana constitutes a criminal offense under T.C.A. § 39-17-418.  T.C.A. § 55-10-401(a)(1) further provides that "[i]t is unlawful for any person to drive or to be in physical control of any automobile or motor vehicle ... [w]hile under the influence of ... marijuana." Mother's violation of the law is exacerbated by her use of marijuana while operating a vehicle in which her child was a passenger, prompting the trial court to find that "if [Mother] had been arrested, she would have been charged with reckless endangerment."

Based upon our review of the record, we do not find that the evidence preponderates against the trial court's finding that Mother endangered Logan by using marijuana while operating a vehicle in which the child was a passenger.  This was a material change that affected Logan's well-being in a meaningful way.

## V. Best Interest

The next issue we address is whether a change of custody was in Logan's best interest.

Once a material change of circumstances has been shown to have occurred, the trial court is required to determine whether a change of custody is in the child's best interest using the factors set forth at T.C.A. § 36-6-106(a). *Cranston,* 106 S.W.3d at 644.  As pertinent to this case, these factors are:

> (1) The love, affection and emotional ties existing between the parents and child;
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment ...;
> (4) The stability of the family unit of the parents;
> (5) The mental and physical health of the parents;
> (6) The home, school and community record of the child;
>
> • • •
>
> (8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person ... .;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

T.C.A. 36-6-106(a).

In *Roache v. Bourisaw*, No. M2000-012651-COA-R3-CV, 2001 WL 1191379, at *8 (Tenn. Ct. App. M.S., Oct. 10, 2001), we noted as follows regarding the determination of a child's best interest in the custody context:

"In child custody cases, the welfare and best interest of the children are the paramount concern and the determination of the children's best interest must turn on the particular facts of each case." *Akins v. Akins*, 805 S.W.2d 377, 378 (Tenn. Ct. App. 1990) (citing Holloway v. *Bradley*, 190 Tenn. 565, 570-72, 230 S.W.2d 1003, 1006 (1950). In determining what is in the best interest of the child, the court is to assess the comparative fitness of the parties in light of the particular circumstances of the case. *Ruyle v. Ruyle*, 928 S.W.2d 439, 442 (Tenn. Ct. App. 1996); *Matter of Parsons*, 914 S.W.2d 889, 893 (Tenn. Ct. App. 1995). "There are literally thousands of things that must be taken into consideration in the lives of young children, and these factors must be reviewed on a comparative approach." *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983)(internal citations omitted).

There is no question that both Mother and Father love their child. However, while Mother has been Logan's primary caregiver since birth, Father is in a better position financially to provide Logan with food, clothing, and medical care than Mother. Both Father and his wife work full-time, with Father having been employed at his own business for the past nineteen years. By her own admission, Mother "has always had sporadic employment," and Father testified that Mother has only worked 22 to 24 months of the past nine years. Mother also conceded that when the parties entered into the agreed order establishing custody in 1997, "it was clear that the parties were aware that the Mother would always be financially dependent upon the Father." While it appears that Mother has been attentive to Logan's educational and medical needs and that Logan is a good student, is well groomed, and properly fed, it further appears, as we have noted, that Mother has used marijuana in Logan's presence without regard for the child's safety, and that fact alone is sufficient to support a finding that the environment created by Mother is unsatisfactory. While Father also admits to using

marijuana, no evidence has been presented that he has used marijuana while caring for Logan or that his actions in this regard have placed Logan at risk of harm. Finally, we have noted that Mother and her current husband are estranged and contemplating divorce while Father and his wife remain married and together and therefore, the family unit presented by Father is more likely to provide Logan with stability and security. Based upon all of these factors and our review of the record as a whole, we cannot agree that the evidence preponderates against the trial court's conclusion that it is in the best interest of the child that custody be changed from Mother to Father.

### *VI. Conclusion*

For the foregoing reasons, we affirm the judgment of the trial court. Costs of appeal are adjudged against the appellant, Holli Colleen Hartsell Harbin.

_____
SHARON G. LEE, JUDGE