IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 9, 2007 Session

## BARRY D. SMITH v. TAMARA YVETTE SMITH

**Appeal from the Chancery Court for Sumner County**
**No. 2002D-208     Tom E. Gray, Chancellor**

---

**No. M2005-01688-COA-R3-CV - Filed April 9, 2008**

---

This appeal involves a dispute regarding the residential schedule for a twelve-year-old child. In the divorce proceeding filed in the Chancery Court for Sumner County, the trial court, at the parties' request, appointed a psychologist to examine the parties and their child and to report his findings and conclusions to the court and the parties. After the psychologist completed and filed his reports, the trial court and the parties used them to fashion interim visitation orders. Despite the earlier use of the reports, the mother objected to the use of the reports at trial on the ground that she had not been afforded an opportunity to depose the psychologist. The trial court overruled the objection. After receiving the testimony of the parties and their child, the court designated the father as the primary residential parent and fashioned a residential schedule accordingly. On this appeal, the mother asserts that the trial court erred by (1) admitting and considering the psychologist's report, (2) designating the father as the primary residential parent, and (3) declining to award her attorney's fees. We have determined that the wife waived her opportunity to object to the introduction of the psychologist's reports. We have also determined that the evidence presented at the trial is, by itself, sufficient to support the trial court's designation of the father as the primary residential parent and that the trial court did not err by denying the mother's request for attorney's fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J., joined. JERRY SCOTT, SR. J., filed a separate dissenting opinion.

Karla C. Hewitt, Nashville, Tennessee, (on appeal) for the appellant, Tamara Y. Smith.

Robert G. Ingrum, Gallatin, Tennessee, and Thomas F. Bloom, Nashville, Tennessee, for the appellee, Barry D. Smith.

### OPINION

### I.

Barry D. Smith and Tamara Y. Smith began dating in late 1994. Both of them had been married before, and Mr. Smith had two children from his previous marriage. Their only child, a daughter, was born in January 1996. Despite their stormy relationship, the parties were married in

December 1999. Mr. Smith continued to work at his concrete business, while Ms. Smith stayed at home to serve as their daughter's primary caregiver.

The parties separated in May 2002, and one week later, Mr. Smith filed a complaint in the Chancery Court for Sumner County seeking a divorce on the grounds of inappropriate marital conduct and irreconcilable differences. In December 2002, Ms. Smith filed an answer and a counterclaim seeking a divorce on the grounds of inappropriate marital conduct and irreconcilable differences. Both parties requested the trial court to designate them as their child's primary residential parent. Each party leveled accusations of misconduct and psychological instability at the other. Of particular concern, Ms. Smith accused Mr. Smith of physically abusing her and the parties' child and also asserted that Mr. Smith had sexually abused their child.

On February 28, 2003, the parties prepared and filed an agreed order establishing supervised visitation for Mr. Smith and the parties' child. The order mandated psychological examinations for the parties and their child and psychosexual evaluations of both Mr. Smith and Ms. Smith. The parties left it to the trial court to select an expert to conduct these evaluations. Accordingly, they included a blank line in their agreed order where the trial court could insert the name of the expert. After talking with several mental health professionals, the trial court appointed Dr. Victor Pestrak, a licensed clinical psychologist, to conduct the examinations. The trial court filed the agreed order containing Dr. Pestrak's name on March 26, 2003.

Dr. Pestrak conducted his evaluations in May and June of 2003. Both parties received copies of his reports, and copies were also filed under seal with the trial court. Dr. Pestrak's reports stated that he "[did] not find any claims of sexual abuse to hold up to even modest scrutiny when data from all three parties [was] examined." The reports also noted that the child "is suffering and the evidence strongly suggests it [is] not due to any sexual abuse. Rather, it lines up with what we see when a conscious or unconscious effort is made by one parent [the mother] to alienate the child from the other parent." Dr. Pestrak determined that the child should be involved in counseling to aid her in processing her parents' divorce, and he concluded that "there is no evidence from these evaluations that any parental visitation needs to be supervised."

Neither party attempted to interview or depose Dr. Pestrak after receiving copies of the reports that had been filed under seal. As the litigation proceeded, Ms. Smith changed attorneys twice, and the trial court conducted several hearings in response to Mr. Smith's requests for increased visitation. The trial court, without objection from the parties or their lawyers, relied upon Dr. Pestrak's reports in its ruling on these visitation matters.

When the case was finally set for trial, Mr. Smith's lawyer informed Ms. Smith's lawyer that he intended to rely on Dr. Pestrak's reports as part of this case. Ms. Smith's lawyer did not notice Dr. Pestrak for a deposition, obtain a subpoena to require Dr. Pestrak to testify in person, or seek a continuance. However, during the trial, which took place over the course of four days in March and April 2005, Ms. Smith's lawyer objected to the introduction and use of Dr. Pestrak's reports on the grounds that they were hearsay, that Dr. Pestrak's appointment did not comply with Tenn. R. Evid.

706, and that he had not been able to cross-examine Dr. Pestrak. The trial court overruled Ms. Smith's objections and admitted Dr. Pestrak's 2003 reports.

On April 26, 2005, the trial court handed down a partial judgment from the bench. The court determined that both parties were guilty of inappropriate marital conduct and declared them divorced. The court divided the marital estate and denied Ms. Smith's request for alimony and attorney's fees. The trial court reserved judgment on a determination of custody, and on June 8, 2005, the court filed a memorandum opinion designating Mr. Smith as the primary residential parent. The trial court filed its final decree of divorce on June 14, 2005. Ms. Smith has appealed.

## II.
### THE ADMISSIBILITY OF DR. PESTRAK'S REPORTS

Ms. Smith renews her arguments that Dr. Pestrak's reports were inadmissible because they were not made under oath and because Dr. Pestrak was not called to testify at trial. Mr. Smith asserts that Ms. Smith waived her opportunity to object to the use of the reports by failing to object when the trial court used them to make interlocutory visitation decisions, by failing to depose Dr. Pestrak, and by failing to subpoena him at trial. Under the facts of this case, we have determined that Ms. Smith failed to question the admissibility of Dr. Pestrak's reports in a timely manner and, therefore, that the trial court did not err by admitting Dr. Pestrak's reports into evidence.

### A.

Decisions regarding the admissibility of evidence lie within the discretion of the trial court. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007); *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997). Therefore, unless the trial court abuses its discretion, appellate courts will not overturn a trial court's rulings on evidentiary matters. *State v. Lewis*, 235 S.W.3d at 141. The abuse of discretion standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001), and reasonable minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000).

Discretionary decisions must, however, take the applicable law and the relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Accordingly, a trial court will be found to have abused its discretion only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999). A trial court, by definition, abuses its

discretion when it makes an error of law. *Koon v. United States*, 518 U.S. 81, 100, 116 S. Ct. 2035, 2047 (1996); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 212 (Tenn. Ct. App. 2002).

**B.**

Ms. Smith relies upon *Dover v. Dover*, 821 S.W.2d 593 (Tenn. Ct. App. 1991) to support her claim that the trial court erred by admitting and considering Dr. Pestrak's reports over her objection. She asserts that *Dover v. Dover* stands for the proposition that the report of an expert appointed by a court in accordance with Tenn. R. Evid. 706 can only be admitted and considered if it is submitted under oath and if the parties have had an opportunity either to depose the expert or to subpoena the expert to testify at trial. We have determined that *Dover v. Dover* does not support Ms. Smith's argument for three reasons.

First, the circumstances in this case are not the same as those in *Dover v. Dover*. It appears that in *Dover v. Dover*, unlike this case, the trial court did not provide the parties with a copy of the expert's report prior to the hearing. Thus, with no knowledge of the substance of the expert's report until the day of the hearing, the parties had little recourse other than to object to the introduction of the report.

In this case, however, the parties knew in late March 2003 that Dr. Pestrak had been appointed to conduct the evaluations that they had requested. In addition, they knew by no later than mid-2003 that Dr. Pestrak had completed his evaluations and had submitted his reports to the trial court, and they also knew what his recommendations were because Dr. Pestrak had provided them with copies of the reports. Finally, the trial court and the parties had used these reports, without objection, to address visitation issues that arose prior to the beginning of the trial on March 10, 2005.

Second, we have concluded this court's interpretation of Tenn. R. Evid. 706 in *Dover v. Dover* was too rigid. The plain language of Tenn. R. Evid. 706 does not state that the only way that a court-appointed expert's opinions may be received into evidence is to call the court-appointed expert as a witness at trial. In this regard, Tenn. R. Evid. 706(a) states that "the [court-appointed] witness's deposition may be taken by any party" and that the "witness shall be subject to examination by each party." It does not say that a court-appointed expert must be deposed or must be cross-examined at trial before the court may consider the expert's opinions.

Dr. Pestrak's identity and the substance of his reports were known by the parties since mid-2003. Either party could have deposed him any time during the eighteen months between the time his reports were filed and the beginning of the trial. He was certainly subject to cross-examination during that time. Had either party desired to cross-examine him on the stand at trial, they could very easily have subpoenaed him to appear personally at trial. Accordingly, we find that the trial court complied with all requirements of Tenn. R. Evid. 706.[1]

---

[1] The trial court disclosed Dr. Pestrak's identity and spelled out his duties in its March 23, 2006 order as required by Tenn. R. Evid. 706(a) & (c). The parties were advised of Dr. Pestrak's findings as required by Tenn. R. Evid. 706(a) when they received copies of his reports in mid-2003. Dr. Pestrak was also available to be deposed and cross-examined beginning in mid-2003 had either party desired to depose or to cross-examine him.

Third, no party in this case has argued, either explicitly or implicitly, that Dr. Pestrak is unqualified or that his methodology, as reflected in his reports to the court, is suspect. There is no objective basis in the record to assume that the conclusions in his reports are suspect. It is clear from this series of events that, at the very least, Ms. Smith waived her right to object to the reports to the extent that they were used as envisioned by the agreed order, i.e., to help determine whether there was adequate evidence that the child had been sexually abused by Mr. Smith. The trial court relied upon the reports as an evidentiary basis for increasing Mr. Smith's visitation with the child during the pendency of the litigation.

Thus, in this case, unlike *Dover v. Dover*, the parties and the trial court had known about and had relied upon the conclusions in Dr. Pestrak's reports for approximately eighteen months before Ms. Smith objected to their use at trial. Dr. Pestrak was not a surprise witness and his conclusions were well-known to the parties. At no time prior to trial did Ms. Smith object to the continued use of Dr. Pestrak's reports, attempt to depose Dr. Pestrak, attempt to subpoena Dr. Pestrak to testify at the trial, or seek a continuance after Mr. Smith disclosed prior to trial that he intended to rely on Dr. Pestak's reports as part of his case. Parties are not entitled to complain about the prejudicial effect of a trial court's ruling when they failed to take the actions reasonably available to them to prevent or nullify the harmful effect of the ruling. Tenn. R. App. P. 36(a). Ms. Smith's inability to cross-examine Dr. Pestrak was caused by her various lawyers' failure since mid-2003 to object to Dr. Pestrak's reports, to seek to depose Dr. Pestrak, or to subpoena him to testify at trial. Accordingly, we have determined that she cannot raise this issue on appeal.

### III.
### THE DESIGNATION OF MR. SMITH AS THE PRIMARY RESIDENTIAL PARENT

In addition to her argument that the trial court erred by admitting Dr. Pestrak's reports, Ms. Smith insists that the evidence does not support the trial court's designation of Mr. Smith as their child's primary residential parent. The record clearly shows that the trial court based its decision on all the evidence presented during the trial, not simply on Dr. Pestrak's reports. We have concluded that Ms. Smith has failed to demonstrate that the evidence preponderates against the trial court's findings of fact or that the trial court erred in its conclusions.

### A.

Prescribing a child's residential schedule is one of the most important decisions confronting a trial court in a divorce case. *See Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001). Courts must strive to devise residential schedules that promote the development of the children's relationship with both parents and interfere as little as possible with post-divorce family decision-making. Tenn. Code Ann. § 36-6-401(a) (2005); *see also Aaby v. Strange*, 924 S.W.2d 623, 629 (Tenn. 1996); *Taylor v. Taylor*, 849 S.W.2d 319, 331-32 (Tenn. 1993). The best interests of the children are paramount, while the desires of the parents are secondary. *See Lentz v. Lentz*, 717 S.W.2d 876, 877 (Tenn. 1986). A residential schedule should never be used to punish or reward the parents, *see Turner v. Turner*, 919 S.W.2d 340, 346 (Tenn. Ct. App. 1995); *Long v. Long*, 488 S.W.2d 729, 733 (Tenn. Ct. App. 1972), but rather should promote the children's best interests by placing them in an environment that will best serve their physical and emotional needs. Tenn. Code Ann. §§ 36-6-401(a), -404(b); *see also Luke v. Luke*, 651 S.W.2d 219, 221 (Tenn. 1983).

There are no hard and fast rules for devising a residential schedule that will best suit a child's needs. *See Taylor v. Taylor*, 849 S.W.2d at 327; *Dantzler v. Dantzler*, 665 S.W.2d 385, 387 (Tenn. Ct. App. 1983). The inquiry is factually driven and requires the courts to carefully weigh numerous considerations. Tenn. Code Ann. § 36-6-404(b)(1) to -404(b)(16); *see also Hogue v. Hogue*, 147 S.W.3d 245, 251 (Tenn. Ct. App. 2004); *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). Courts customarily devise residential schedules by engaging in a comparative fitness analysis that requires them to determine which of the available custodians is comparatively more fit than the other. *See In re Parsons*, 914 S.W.2d 889, 893 (Tenn. Ct. App. 1995). This analysis does not measure the parents against the standard of perfection, *Earls v. Earls*, 42 S.W.3d 877, 885 (Tenn. Ct. App. 2000). Rather, it requires the courts to determine which of the parents, in light of their present circumstances, is comparatively more fit to assume and discharge the responsibilities of being the primary residential parent.

Decisions relating to residential schedules often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves. *See Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). Accordingly, appellate courts are reluctant to second-guess a lower court's decisions. Courts must be able to exercise broad discretion in these matters, Tenn. Code Ann. § 36-6-101(a)(2)(A)(i) (Supp. 2007), but they still must base their decisions on the proof and upon the appropriate application of the relevant principles of law. *See D v. K*, 917 S.W.2d 682, 685 (Tenn. Ct. App. 1995). Thus, we review these decisions de novo on the record with a presumption that the lower court's findings of fact are correct unless the evidence preponderates otherwise. *Marlow v. Parkinson*, 236 S.W.3d 744, 748 (Tenn. Ct. App. 2007); *Johnson v. Johnson*, 165 S.W.3d 640, 645 (Tenn. Ct. App. 2004).

Courts necessarily have broad discretion to fashion residential schedules that best suit the unique circumstances of each case. *See Eldridge v. Eldridge*, 42 S.W.3d at 85; *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999); *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988). It is not our role to "tweak [these decisions] . . . in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d at 88. A lower court's decision regarding custody or visitation should be set aside only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge v. Eldridge*, 42 S.W.3d at 88.

Unless a trial court, acting in accordance with Tenn. Code Ann. § 36-6-406 (2005) determines that the use of a permanent parenting plan is inappropriate, all final divorce decrees in cases in which there are minor children must include a permanent parenting plan. Tenn. Code Ann. § 36-6-404(a). The court must "make residential provisions for each child, consistent with the child's developmental level and the family's social and economic circumstances, which encourage each parent to maintain a loving, stable, and nurturing relationship with the child," Tenn. Code Ann. § 36-6-404(b), using the specific factors listed in Tenn. Code Ann. § 36-6-404(b)(1) to (15), as well as "any other factors deemed relevant" in accordance with Tenn. Code Ann. § 36-6-404(b)(16).

**B.**

The trial court's June 8, 2005 memorandum opinion contains explicit findings of fact with regard to the relevant factors in Tenn. Code Ann. § 36-6-404(b).[2] These findings of fact reflect that the trial court carefully considered the testimony of Ms. Smith, Mr. Smith, and the parties' child. The trial court also expressly found that portions of Ms. Smith's testimony and the child's testimony lacked credibility. Based on the evidence, the trial court concluded that neither parent was meeting their child's emotional needs and then directed that the parents and the child undergo counseling to address that shortcoming.

In addition, the trial court concluded that Ms. Smith had failed to present sufficient evidence to prove her accusations that Mr. Smith had sexually abused the parties' daughter. The court pointed to several specific behaviors reflecting Ms. Smith's unwillingness to promote a good relationship between Mr. Smith and the parties' child and concluded that these behaviors were unreasonable. Based on these findings, the trial court concluded that the interests of the parties' child would be best served by designating Mr. Smith as the primary residential parent.

We have thoroughly reviewed the record in this matter, especially the testimony of Ms. Smith, Mr. Smith, and the parties' child. The trial court never explicitly cited Dr. Pestrak's reports with regard to his findings and conclusions regarding the designation of a primary residential parent. This record provides no basis for concluding that the trial court's designation of Mr. Smith as the primary residential was not largely based on the testimony presented during the trial. Based on our review of the entire record, we conclude that the evidence does not preponderate against the trial court's findings as thoughtfully related in its order. Accordingly, we decline to disturb the trial court's parenting arrangement.

## IV.
### THE DENIAL OF MS. SMITH'S REQUEST FOR ATTORNEY'S FEES

As a final matter, Ms. Smith asserts that the trial court erred by refusing to award her attorney's fees because she is economically disadvantaged in comparison to Mr. Smith. For his part, Mr. Smith contends that Ms. Smith has sufficient resources to pay her own attorney's fees and, therefore, that the trial court's decision was correct. We find that Mr. Smith has the better argument.

Civil litigants in Tennessee's courts are generally required to be responsible for their own attorney's fees in the absence of a statute or contractual provision otherwise. *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn.1998); *Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 33 (Tenn. Ct. App. 2002). In domestic relations cases, three of the most common circumstances in which attorney's fees are appropriate include: (1) awards to economically disadvantaged spouses as spousal support, (2) awards to spouses who must return to court to enforce child support obligations, and (3) awards to spouses seeking to enforce a marital dissolution agreement when the agreement contains a provision for attorney's fees. *Elliott v. Elliott*, 149 S.W.3d 77, 88 (Tenn. Ct. App. 2004).

---

[2] The trial court's conclusion that Mr. Smith had not sexually abused his daughter obviated the application of Tenn. Code Ann. § 36-6-406.

An award of attorney's fees to an economically disadvantaged spouse is usually characterized as alimony in solido. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002); *Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001). Accordingly, a trial court considering a request for attorney's fees must consider the factors contained in Tenn. Code Ann. § 36-5-121(i)(2005), with the most important factors being the need of the economically disadvantaged spouse and the ability of the obligor spouse to pay. *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001). Trial courts customarily will award attorney's fees as alimony when an economically disadvantaged spouse would otherwise be forced to deplete assets in order to pay attorney's fees. *Koja v. Koja*, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000); *Palmer v. Palmer*, 562 S.W.2d 833, 839 (Tenn. Ct. App. 1977). Therefore, a party need not be required to pay legal expenses out of funds and assets awarded by the trial court and intended to provide future support and income. *Batson v. Batson*, 769 S.W.2d 849, 862 (Tenn. Ct. App. 1988).

Awards of attorney's fees as alimony in solido are largely discretionary with the trial court. Thus, the appellate courts will ordinarily not interfere with an alimony in solido award for attorney's fees unless the trial court did not appropriately exercise its discretion based on the facts. *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995); *Eldridge v. Eldridge*, 137 S.W.3d 1, 25 (Tenn. Ct. App. 2002). A trial court fails to exercise its discretion properly when its decision is not supported by the evidence, when it applies an incorrect legal standard, or when it reaches a decision which is against logic or reasoning that causes an injustice to the party complaining. *Biscan v. Brown*, 160 S.W.3d 462, 468 (Tenn. 2005).

Two of Ms. Smith's former attorneys have placed liens on her judgment totaling $16,331.70. Ms. Smith's portion of the marital estate consists of approximately $61,000 in a combination of cash and investments, in addition to a BMW vehicle valued at approximately $4,000 and what is, apparently, several thousand dollars worth of personal property and jewelry. The record does not indicate that Ms. Smith was made responsible for any marital debt, and Ms. Smith has not raised an issue with regard to the division of the marital estate.

The marriage was of a very short duration – only twenty-eight months passed between the wedding and Mr. Smith's filing for divorce. During the marriage, Mr. Smith worked while Ms. Smith stayed home. After the parties' separation and up through the trial, Mr. Smith paid Ms. Smith almost $2,000 per month for living expenses and child support, in addition to paying for their child to attend private school. Meanwhile, Ms. Smith began working in March 2003 – ten months into the five years of litigation that have comprised this divorce. Ms. Smith had completed two years of college prior to the marriage and was enrolled in college during the litigation of this case. As of the trial, Ms. Smith was employed with the State of Tennessee, grossing approximately $18,072 annually. She is responsible for child support payments of $139 monthly. There is no indication in the record that Ms. Smith is anything other than an able-bodied person who can expect an additional twenty years of a working career. While it is true that the parties have a great disparity in post-divorce income,[3] considering all the evidence presented at trial, we cannot say that the trial court abused its discretion by failing to award Ms. Smith her attorney's fees.

---

[3]Mr. Smith's gross income is approximately $14,000 per month.

**V.**

The judgment of the trial court is affirmed.  We tax costs to Ms. Smith for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.