IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 27, 2011 Session

## IN RE: ELAINA M.

**Direct Appeal from the Juvenile Court for Rutherford County**
**No. 5302C      Donna Scott Davenport, Judge**

**No. M2010-01880-COA-R3-JV - Filed October 25, 2011**

In this modification of child custody case, Father petitioned the court to change custody based on Mother's relocation and the subsequent interference with his visitation. Finding a material change in circumstances, the juvenile court named Father primary residential parent. Mother appeals. Concluding that a material change in circumstances existed and the change in custody was in the child's best interest, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Juvenile Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Jonathan L. Miley, Nashville, Tennessee, for the appellant, Stacey M.

Jedidiah L. Cochran, Nashville, Tennessee for the appellee, Ricardo H.

**OPINION**

## I. Background

The minor child, Elaina M.[1] was born on January 30, 2002 to Defendant/Appellant, Stacey M. ("Mother"). When the child was four years old, Mother filed a petition to establish parentage against Plaintiff/Appellee, Ricardo H. ("Father"), seeking child support. The juvenile court entered an order on July 11, 2006 ordering genetic testing. On August 20, 2006, Father petitioned the court to establish a parenting plan allowing him reasonable visitation with the child and joint decision-making authority with Mother. On August 30,

---

[1] In cases involving minor children, it is this Court's policy to redact names sufficient to protect the children's identity.

2006, Father asked for a temporary parenting plan pending the final decision on his earlier petition. Genetic testing subsequently confirmed that Father was the child's biological parent. On September 11, 2006 the court entered an order confirming parentage and reserving the issue of child support. On October 3, 2006, the juvenile court entered an order granting Father temporary visitation with the child. On January 7, 2007, the child support referee entered an order requiring Father to pay $1079.00 per month in child support, reserving the issue of any arrearage, and instructing the parties that:

> Attached hereto is exhibit A, which is incorporated herein by reference. The parties shall update sa [sic] information within ten days of any changes thereto. The defendant [Father] shall notify the plaintiff [Mother], the child support enforcement office, and the clerk of the court of any changes in personal residence or employment within ten days of any such change.

Exhibit A is not contained in the record. Father petitioned for rehearing to the juvenile court judge, arguing that the support obligation was too high and did not take into account his other children.[2]  The juvenile court judge modified the support order on February 12, 2007, ordering Father to pay $959.00 per month.

On March 20, 2007, Father filed a motion for default judgment on his petition to establish a parenting plan, arguing that Mother had failed to file a response. On the same day, the child support referee entered an order requiring Father to pay retroactive child support from the time of the child's birth.[3] On May 2, 2007, Mother filed a counter-petition to Father's petition for default judgment, asking to be named the sole custodian of the child, after which Father struck his motion for default judgment. On May 22, 2007, the juvenile court judge temporarily increased Father's visitation with the child pending a final determination.

On July 31, 2007, nearly one year from the time the petition was filed, the referee entered an order on Father's petition to establish a parenting plan. The referee awarded Father standard visitation, including every other weekend from Friday night to Sunday night, and Wednesday night every other week. The court also awarded Father two weeks in the summer and alternating holidays.

---

[2]In total, Father has filed five petitions to rehear or modify in an attempt to reduce his child support obligation, many of which were successful.

[3] The arrearage was later modified on July 19, 2007 by the juvenile court judge to decrease the amount of arrearage based on the time Father had actual notice of the child's existence.

On December 9, 2008, Father filed a motion to modify the parenting plan and to be named primary residential parent. The petition alleged that Mother moved out of state without properly notifying Father and thereby interfered with his visitation with the child. After resolution of a series of issues concerning the court's and Mother's attorney's ability to contact Mother, a hearing was held before the magistrate judge on December 2, 2009. On the same day, the magistrate entered an order finding a material change in circumstances and naming Father primary residential parent, based on Father's stable home life.

Mother filed a petition to rehear in the juvenile court on December 8, 2009.[4] On December, 16, 2009, Mother also filed a petition to stay the change in custody pending the new hearing; this petition was denied by the juvenile court judge by order of January 28, 2010. The juvenile court held a hearing on May 25, 2010, wherein Father testified that, in October or November of 2008, Mother moved from Murfreesboro, Tennessee[5] to Ohio.[6] Although Mother informed Father that she was looking for a higher-paying job in Texas or Ohio earlier in the year, Mother did not send Father any written notification informing Father of the relocation prior to moving to Ohio and enrolling the child in school. After Father learned of the move and objected to the lack of written notification, Mother sent a certified letter to Father informing him of the move, but failed to provide any contact information for the new residence in Ohio at that time. The evidence showed that, during the time the child was in Ohio, and prior to the petition to change custody, which was filed in December of that year, Father received none of his scheduled visitation except for the Thanksgiving holiday.

Father also testified that the child had missed a considerable number of school days since moving to Ohio, though the school records showed that only four of nineteen absences occurred prior to the filing of the petition. In addition, the records showed that, academically, the child was meeting expectations in all areas and reading above grade-level. Father further

---

[4] Decisions by magistrate judges in juvenile court may be reheard by the juvenile court judge, who may call a new hearing. *See* Tenn. Code Ann. §37-1-107(e) ("Any party may, within five (5) days thereafter [a final order by a magistrate judge], excluding nonjudicial days, file a request with the court for a hearing by the judge of the juvenile court. The judge may, on the judge's own motion, order a rehearing of any matter heard before a magistrate, and shall allow a hearing if a request for such hearing is filed as herein prescribed."). After the *de novo* review by the juvenile court judge, the matter is appealable to the Tennessee Court of Appeals. *See* Tenn. Code Ann. §37-1-159 ("Appeals in all other civil matters heard by the juvenile court shall be governed by the Tennessee Rules of Appellate Procedure.").

[5] Prior to moving to Murfreesboro, Mother lived near Father in LaVergne, Tennessee. Once Mother moved to Murfreesboro, Father was unable to consistently exercise his weeknight visitation due to the approximately 17 mile distance between his home and the child's home and school.

[6] At the time of the hearing, Mother had moved back to Tennessee.

testified that he was not listed on the contact information for the child at the school in Ohio. Father also testified that Mother had damaged the child's hair with a chemical treatment and, once he gained primary custody of the child, he and his wife noticed a minor skin condition on the child's scalp that required prescription shampoo to treat. Finally, Father testified that, in the summer of 2009, Mother left the child with Father for the entire summer, rather than his two weeks of non-consecutive visitation, and did not visit the child the entire time that she was with Father in Tennessee.

Mother next testified that she had verbally informed Father of her move to Ohio prior to actually moving. She also testified that she called the child support office to inquire as to whether she needed to inform Father of the move and the child support office indicated that no notification was required. Mother further testified that, after the change in custody, she had to hire a counselor to speak with the child. According to Mother, the child was distressed by the move away from the child's siblings and Mother, who had been the primary residential parent throughout the child's life. Mother did admit, however, that at the time of the hearing, the child had adjusted well to living with Father. Mother explained that, although Father was not listed on the registration information at the Ohio school, his name and address were on an index card containing the child's contact information; Mother did not produce this card. Mother stated that Father owed her approximately $19,000.00 in back child support, although she explained that the reason for the arrearage was due to the fact that he had been laid off from his job for a year. The reason for the move to Ohio, Mother explained, was to increase her income so that she could be less dependent on Father's child support payments. When asked about her failure to update the court clerk's office with regard to her address, as required by the January 7, 2006 order, Mother stated that she did not know that the child support office and the court clerk's office were different entities and that she believed that, by notifying the child support office, she was complying with the order.

At the end of Mother's direct examination, the juvenile court judge questioned Mother about the various addresses Mother had given the court since the first petition to establish parentage. For example, the court questioned Mother about one address because an attachment warrant issued for Mother's arrest was unable to be served on her at that address. Additionally, there were several summonses that went undelivered. With regard to the summonses, Mother explained that she gave the court the correct address but that she failed to pick up the summonses because of her work schedule. The court further inquired as to her first address in Ohio, 2377 Edmonton Road, which she had given the court after the move. Mother stated that she had never, in fact, lived on Edmonton Road, but that she had given her attorney that address, who subsequently informed the court of the address change. When

asked why she gave her attorney a false address,[7] Mother stated that "I didn't want the other Father to know where I was," referring to the father of her other child, and not the Father in this case.

The juvenile court judge took the matter under advisement at the close of proof. In the order, entered August 2, 2010, the juvenile court judge found that the move to Ohio constituted a material change in circumstances and again named Father primary residential parent. Prior to deciding the issues, the court made several adverse credibility findings against Mother, based on her failure to sign for letters from the court sent to her address, her admission that she had given her own attorney a false address, and her testimony that she had given Father's information to the school in Ohio, which was contradicted by the only evidence in the record. After making these credibility findings, the court specifically found that Mother's move to Ohio, coupled with her failure to follow the court's orders regarding her address, constituted a material change in circumstances in that Mother interfered with Father's parenting time, impeding his relationship with the child. With regard to the decision that changing custody to Father was in the child's best interest, the court stated:

> Father has a stable and safe home environment. Since the Court Order of December 2009 that gave custody to Father, he has enrolled the minor child in a school which is in very close proximity to his residence. Father is married and has lived at his current residence for approximately five (5) to six (6) years. Accordingly custody of the above-named child is hereby granted to Father.

The order further outlined Mother's visitation and child support obligation of $500.00 per month. Mother properly appealed to this Court.[8]

---

[7] Prior to the final order granting custody to Father, Mother's first attorney sought to withdraw, stating that Mother "has failed to return attorney's phone calls, and has moved and not notified attorney of her new address." The court granted the motion to withdraw on September 17, 2009. Mother proceeded *pro se* for some time, until she hired another attorney, who represented her at the hearing before the juvenile court judge. No motion to withdraw by Mother's second attorney is reflected in the record; however, on November 30, 2010, Mother's third, and current, attorney filed his notice of appearance. While this appeal was pending, Mother's third attorney filed his own motion with this Court to withdraw as Mother's counsel, citing again Mother's "refus[al] to respond to any of the vital communications sent to her over the past two weeks." On April 29, 2011, however, Mother's attorney filed a notice of striking the motion to withdraw, stating that "he was finally able to communicate with his client . . . and that all issues have been resolved."

[8] Father filed his appellate brief *pro se*. However, on September 14, 2011, an attorney filed a notice of appearance on Father's behalf. On September 21, 2011, Father petitioned this Court to continue oral arguments and grant him leave to file an amended brief. This Court denied Father's request to continue oral

(continued...)

## II. Issues Presented

Mother raises the following issues for review:

1. Whether the trial court erred in finding a material change in circumstances justifying a change in custody?
2. Whether the trial court erred in basing its credibility determinations on irrelevant facts?
3. Whether the trial court erred in changing custody without conducting an appropriate comparative fitness analysis of the best interests of the child?
4. Whether the trial court improperly assisted Father, who was proceeding *pro se*, during the trial?
5. Whether Mother should be awarded attorney's fees at trial and on appeal?
   In the posture of Appellee, Father raises the following issue:
1. Whether Father should be awarded costs incurred in the trial court and on appeal?

## III. Standard of Review

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Tenn. R. App. P. 13(d). This standard "means the appellate court will affirm the trial court's decision unless an error of law affecting the result has been committed or unless the evidence preponderates against the trial court's findings of fact." *Cotter v. Burkhalter*, No. M2000-03183-COA-R3-CV, 2002 WL 772581, at *8 (Tenn. Ct. App. April 30, 2002) (citing *Roberts v. Robertson County Board of Education*, 692 S.W.2d 863, 685 (Tenn. Ct. App. 1985)). In applying the *de novo* standard, we are mindful that "'[t]rial courts are vested with wide discretion in matters of child custody' and that 'the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion.'" *Hyde v. Amanda Bradley*, No. M2009-02117-COA-R3-JV, 2010 WL 4024905, at *3 (Tenn. Ct. App. Oct. 12, 2010) (citing *Johnson v. Johnson*, 169 S.W.3d 640, 645 (Tenn. Ct. App. 2004)). Because "[c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during . . . proceedings," appellate courts "are reluctant to second-guess a trial court's decisions." *Hyde*, 2010 WL 4024905, at *3 (citing *Johnson*, 169 S.W.3d at 645).

When the resolution of the issues in a case depends upon the truthfulness of witnesses,

---

[8](...continued)

arguments, but granted Father until September 26, 2011 to file an amended brief. Father filed the amended brief on September 26, 2011, one day prior to oral arguments.

the trial judge who has the opportunity to observe the manner and demeanor of the witnesses while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp*., 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). "If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary." *Heffington v. Heffington,* No. M2009-00434-COA-R3-CV, 2010 WL 623629, at *2 (Tenn. Ct. App. Feb. 19, 2010).

## IV. Analysis

Mother first argues that the trial court erred in finding a material change in circumstances warranting a change in custody. Specifically, she contends that her move to Ohio does not constitute a material change in circumstances.

It is well settled that "[a] custody decision, once final, is *res judicata* upon the facts in existence or reasonably foreseeable when the decision was made." *Scofield v. Scofield*, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. Feb. 28, 2007) (citing *Young v. Smith*, 193 Tenn. 480, 246 S.W.2d 93, 95 (Tenn. 1952)); *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001); *Solima v. Solima*, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998); *Long v. Long*, 488 S.W.2d 729, 731-32 (Tenn. Ct. App. 1972). However, because children's and parents' circumstances change, our courts are "empowered to alter custody arrangements when intervening circumstances require modifications." *Scofield*, 2007 WL 624351, at *2 (citing Tenn. Code Ann. § 36-6-101(a)(1)); *see also Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995)).

Modification of an existing custody or visitation arrangement involves a two-step analysis. Tenn. Code Ann. §36-6-101(a)(2)(B)-(C); *see also Boyer v. Heimermann*, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007). First, the parent attempting to modify the existing custody or visitation arrangement must prove that a material change in circumstances has occurred. Tenn. Code Ann. §36-6-101(a)(2)(B)-(C); *see also Taylor v. McKinnie*, No. W2007-01468-COA-R3-JV, 2008 WL 2971767, at *3 (Tenn. Ct. App. Aug. 5, 2008) (citing *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002)). "We recognize that the circumstances of children and their parents inevitably change—children grow older, their needs change, one or both parties remarry. But not all changes in the circumstances of the parties and the child warrant a change in custody." *Cosner v. Cosner*, No. E2007-02031-COA-R3-CV, 2008 WL 3892024, at *4 (Tenn. Ct. App. Aug. 22, 2008). "There are no hard and fast rules for when there has been a change of circumstances sufficient to justify a change in custody." *Id.* (citing *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003)). However, to determine whether a material change in circumstances has occurred, the court should consider whether: "(1) the change occurred after the entry of the order sought to be

modified; (2) the changed circumstances were not reasonably anticipated when the underlying decree was entered; and (3) the change is one that affects the child's well-being in a meaningful way." **Cosner**, 2008 WL 3892024 at *4 (citing **Kendrick**, 90 S.W.3d at 570); *see also* **Cranston**, 106 S.W.3d at 644; **Blair v. Badenhope**, 77 S.W.3d 137, 150 (Tenn. 2002).

We note that the determination of whether a "material change of circumstances" has occurred requires a different standard depending upon whether a parent is seeking to modify custody (i.e., change the primary residential parent) or modify the residential parenting schedule. Tenn. Code Ann. §36-6-101(a)(2)(B)-(C); *see also* **Pippin v. Pippin**, 277 S.W.3d 398, 406-07(Tenn. Ct. App. 2008) (citing **Massey-Holt v. Holt**, 255 S.W.3d 603 (Tenn. Ct. App. 2007)).[9] As previously stated by this Court, "a 'change in circumstance' with regard to the parenting schedule is a distinct concept from a 'change in circumstance' with regard to the identity of the primary residential parent." **Massey-Holt**, 255 S.W.3d at 607. Subsection (a)(2)(C) establishes a lower threshold for modification of a residential parenting schedule. **Scofield v. Scofield**, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. Feb. 28, 2007) (citing **Rose v. Lashlee**, No. M2005-00361-COA-R3-CV, 2006 WL

---

[9] In pertinent part, Tenn. Code Ann. § 36-6-101(a)(2)(B)-(C) provides:

> (B) If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.
>
> * * *
>
> (C) If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

2390980, at *2, n.3 (Tenn. Ct. App. Aug. 18, 2006) (holding that Tenn. Code Ann. §36-6-101(a)(2)(C) "sets a very low threshold for establishing a material change of circumstances")).

If the petitioner makes a *prima facie* case for a material change in circumstances, then the court must determine whether a change in custody or visitation is in the best interest of the child. ***In re J.C.S.***, No. M2007-02049-COA-R3-PT, 2008 WL 2924982, at *6 (Tenn. Ct. App. July 28, 2008). This determination requires consideration of a number of factors, including those set forth at Tennessee Code Annotated Section 36-6-106(a) to make an initial custody determination, and those set forth at Tennessee Code Annotated Section 36-6-404(b) to fashion a residential schedule. ***Id.***

Mother admits, as she must, that she was required to notify Father in writing of her intended move pursuant to Tennessee Code Annotated Section 36-6-108(a), the parental relocation statute.[10] However, she argues that the move did not affect the child or her relationship with Father, and therefore should not constitute a material change in circumstances.

Mother argues that relocation alone does not constitute a material change in circumstances. For example, in ***Lima v. Lima***, No. W2010–02027–COA–R3–CV, 2011 WL 3445961, at *9 (Tenn. Ct. App. Aug. 09, 2011), this Court concluded that relocation "cannot

---

[10] The statute provides, in pertinent part:

If a parent who is spending intervals of time with a child desires to relocate outside the state or more than one hundred (100) miles from the other parent within the state, the relocating parent shall send a notice to the other parent at the other parent's last known address by registered or certified mail. Unless excused by the court for exigent circumstances, the notice shall be mailed not later than sixty (60) days prior to the move. The notice shall contain the following:

(1) Statement of intent to move;
(2) Location of proposed new residence;
(3) Reasons for proposed relocation; and
(4) Statement that the other parent may file a petition in opposition to the move within thirty (30) days of receipt of the notice.

Tenn. Code Ann. §36-6-108(a).

serve as the basis for Father's asserted material change in circumstances." Unlike Mother here, however, the Mother in ***Lima*** properly petitioned the court for permission to relocate. In permitting the relocation, the court made an implicit best interest analysis. *See id.* In declining to find a material change in circumstances, the ***Lima*** court quoted ***Price v. Bright***, No. E2003–02738–COA–R3–CV, 2005 WL 166955, at *12 (Tenn. Ct. App. Jan. 26, 2005), stating:

> If [Father] is arguing that the [ ] Court now should make a separate best interests of the child determination based upon a material change of circumstances with that material change of circumstances being [Mother's] court approved relocation to [Las Vegas], that position is totally without merit. To adopt [Father's] position that a relocation approved by a court pursuant to Tenn. Code Ann. § 36–6–108(d) is a material change of circumstances requiring a best interests of the child determination would be to read into sub-section (d) a best interests determination requirement that our Legislature chose not to include. It is not the role of this Court to amend by judicial order a statute enacted by our Legislature.

***Lima***, 2011 WL 3445961, at *9. In the present case, however, Mother failed to provide the required written notice to Father and, therefore, gave him no opportunity to contest the move in court. Accordingly, the court was deprived of the opportunity to determine if the move was in the best interests of the child. Therefore, the move to Ohio and the accompanying violation of the parental relocation statute may considered in determining whether a material change in circumstances exists in this case.

The court also found that Mother did not comply with the court's order requiring her to update the court clerk regarding her contact information. Failure to follow an existing parenting plan or court order regarding custody and visitation can constitute a material change of circumstances, as it implicates the custodial parent's willingness "to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child." Tenn. Code Ann. § 36–6–106(a); ***Cranston v. Combs***, 106 S.W.3d 641, 645 (Tenn. 2003); ***In the Matter of Parsons***, 914 S.W.2d 889 (Tenn. Ct. App.1995); ***Rushing v. Rushing***, No. W2003–01413–COA–R3–CV, 2004 WL 2439309 (Tenn. Ct. App. Oct. 27, 2004).

The order at issue in this case required the parties to update the information contained

-10-

in an exhibit within ten days of a change.[11] However, the exhibit is not contained in the record. The burden is on the appellant to provide a record of the trial proceedings that will allow for meaningful review. Tenn. R. App. P. 24(b). Case law is clear that "[i]n the absence of [here, the exhibit], this Court presumes that sufficient evidence existed to support the trial court's decision." *Wangerin v. Wangerin*, No. M2010–00628–COA–R3–CV, 2011 WL 3820692, at *6 (Tenn. Ct. App. Aug. 26, 2011) (citing *Irvin v. City of Clarksville*, 767 S.W.2d 649, 653 (Tenn. Ct. App.1988). Because the exhibit is not included in the record, we must agree with the trial court that the order required Mother to update the clerk of her address and contact information. Additionally, Mother not only admitted that she was aware of the order, but also admitted that she failed to comply (although she argued that her failure was simply a misunderstanding). Mother's failure to update her address even extended to her own attorney, who filed a motion to withdraw based on her inability to maintain contact with Mother. In fact, the record shows a pattern on Mother's part of both refusing to accurately update her address and failing to maintain contact with the court and her own attorneys.

Mother's failure to follow both the relocation statute and the court's order regarding updating her contact information support the trial court's finding that Mother had an unwillingness "to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child." *See* Tenn. Code Ann. § 36-6-106(a). Mother failed to adequately apprise Father of the child's location and give him the appropriate information to maintain contact with his daughter. In doing so, Mother deprived the child of some of Father's court-ordered visitation and his right to contact the child.[12] Accordingly, we affirm the trial court's determination that a material

---

[11] The court's order requiring notification to the child support office, the court clerk and plaintiff of any change in residence or employment applied only to "defendant," which was Father in this case.

[12] The alternative residential parent has certain rights as prescribed by law, many of which were interfered with by the unauthorized move and Mother's failure to inform Father of the child's address. Tennessee Code Annotated Section 36-6-101(a) states, in pertinent part:

> (i) The right to unimpeded telephone conversations with the child at least twice a week at reasonable times and for reasonable durations;
> (ii) The right to send mail to the child that the other parent shall not open or censor;
>
> * * *
>
> (iv) The right to receive directly from the child's school records, names of teachers, class schedules, standardized test scores, and any other records customarily made available to parents, upon written request that includes a current mailing address and upon payment of reasonable costs of duplicating;

(continued...)

change in circumstances occurred in this case.

The trial judge also considered Mother's failure to accurately update her address in making adverse credibility findings against Mother, which Mother argues is in error. Credibility findings are entitled to considerable deference on appeal and we will not overturn those findings unless there is clear and convincing evidence to the contrary. *See **Heffington v. Heffington,*** No. M2009-00434-COA-R3-CV, 2010 WL 623629, at *2 (Tenn. Ct. App. Feb. 19, 2010). The court's credibility findings were based on the fact that Mother admittedly gave a false address to her own attorney, which was then given to the court. Mother also admitted that she refused to sign for documents that were sent to her by the court, although she explained that sometimes she could not get the documents due to her work schedule. Finally, Mother testified to facts that were contrary to the documentary evidence produced during the hearing.

Mother argues that the court's credibility findings were based on irrelevant information. However, these actions show that Mother, as the juvenile court stated, "lacks truthfulness and credibility" in her actions involving both her attorney and the juvenile court, and there is no evidence in the record to contradict the court's findings. Accordingly, we conclude that these actions are relevant to the issue of credibility and affirm the trial court's credibility findings against Mother.

Mother next argues that the court failed to make a proper comparative fitness analysis in deciding to change custody to Father. Once the court determines that there has been a material change in circumstances, the court is required to determine if a change in custody is in the best interests of the child. *See **In re J.C.S.***, No. M2007-02049-COA-R3-PT, 2008 WL 2924982, at *6 (Tenn. Ct. App. July 28, 2008). In making this determination, the custody statute states that "[t]he court shall consider all relevant factors" and states various

---

[12](...continued)

* * *

(viii) The right to receive from the other parent, in the event the other parent leaves the state with the minor child or children for more than two (2) days, an itinerary including telephone numbers for use in the event of an emergency; and
(ix) The right of access and participation in education, including the right of access to the minor child or children for lunch and other activities, on the same basis that is provided to all parents, provided the participation or access is reasonable and does not interfere with day-to-day operations or with the child's educational performance.

factors to be considered. *See* Tenn. Code Ann. §36-6-106(a). The word "shall" places a mandatory duty on trial courts to consider these factors. *See **Stovall v. The City of Memphis**,* No. W200302036COAR3CV, 2004 WL 1872896, *3 (Tenn. Ct. App. Aug 20, 2004) (citing ***Gabel v. Lerma***, 812 S.W.2d 580, 582 Tenn. Ct. App. 1965)).

The juvenile court judge determined that naming Father primary residential parent was in the child's best interest; however, the judge failed to articulate any of the factors as set out in Tennessee Code Annotated Section 36-6-106(a). While this Court encourages trial judges to be as precise as possible in making child custody findings, trial judges are not required to articulate every factor and its application to the facts at issue.[13] *See **Murray v. Murray**,* No. M2009-01576-COA-R3-CV, 2010 WL 3852218, at *8 (Tenn. Ct. App. Sept. 28, 2010) (stating that "while the statute requires the trial court to consider all the applicable factors, there is no statutory requirement that the court list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination");

***Brady v. Gugler***, No. M2006-01993-COA-R3-CV, 2008 WL 836089, at *4 (Tenn. Ct. App. March 27, 2008) (noting that "there is no statutory language requiring articulation of the factors or expressed findings of fact, nor is there common law requiring such"). Even though the court need not articulate each factor, the judge must, nevertheless, make a best interest analysis to determine which parent is comparatively more fit. *See **Murray**,* 2010 WL 3852218, at *8. From our review of the order, we cannot conclude that the judge made a best interest analysis in this case. Specifically, the judge considered only the stability of Father's household and Mother's interference with visitation. The judge did not consider other relevant factors, such as Father's child support arrearage or the fact that Mother had been the child's primary caregiver all her life prior to the change in custody. However, in the interest of judicial economy, and to prevent further delay in this case, which has lasted nearly three

---

[13] The case law holding that trial judges need not articulate the factors pursuant to Tennessee Code Annotated Section 36-6-106(a) appears to conflict with the intent of Tennessee Rule of Civil Procedure 52.01, which states:

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

Although this hearing took place in juvenile court, the Tennessee Rules of Civil Procedure apply to this action. *See* Tenn. R. Juv. P. 1 ("The Tennessee Rules of Civil Procedure shall govern all cases involving the termination of parental rights, paternity cases, guardianship and mental health commitment cases involving children, and child custody proceedings . . . .").

years from the time the petition was filed, we will perform our own best interest analysis to determine if modification of custody is in the child's best interest. *See* **Conner v. Conner**, No. W2008-02254-COA-R3-CV, 2009 WL 3720582, at \*8 (Tenn. Ct. App. Nov. 9, 2009).

Turning to the issue of whether the change in custody was in the best interest of the child, we will consider the factors as set forth in Tennessee Code Annotated Section 36-6-106(a).

1.  The love, affection and emotional ties existing between the parents or caregivers and the child;

The evidence suggests that the child has a close and loving relationship with both parents. Accordingly, this factor does not favor either parent.

2.  The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;

Mother has been the primary caregiver for the child's entire life and nothing in the record indicates that she was unable or unwilling to provide for the child. At the time of the hearing, Father had an approximately $19,000.00 arrearage on his child support obligation, though Mother admits that the arrearage was due to Father's inability to pay rather than a willful refusal to pay. From our review of the record, once a child support order was entered, Father timely paid his support obligation through a wage garnishment and has only sought to reduce his payment through proper modification of the court's order. Nonetheless, based on the evidence, this factor weighs in favor of Mother.

3.  The importance of continuity in the child's life and the length of time the child lived in a stable, satisfactory environment; provided, that, where there is a finding under subdivision (a)(8), of child abuse, as defined in §39-15-401 or §39-15-402, of child sexual abuse, as defined in §37-1-602, by one (1) parent, and that a nonperpetrating parent or caregiver has relocated in order to flee the perpetrating parent, that the relocation shall not weigh against an award of custody;

There have been no allegations or findings of abuse in this case. Mother has been the child's primary caregiver since birth. However, during this time, Mother moved a number of times, changing the child's school each time. Father, on the other hand, has lived in the same home for five or six years and according to the court this home is a "safe and stable environment." In addition, the child has been living with Father for nearly two years since custody was changed to Father and although Mother testified that the child was upset by the move initially, the child has adjusted well. Accordingly, we find that this factor does not favor either parent.

4.  The stability of the family unit of the parents or caregivers;

Mother has moved several times during the child's life, requiring the child to change schools, each time moving farther from Father. Father, on the other hand, has lived in the same home much of the child's life. Accordingly, we find this factor weighs in favor of Father.

5.      The mental and physical health of the parents or caregivers;

Both parents appear to be in good mental and physical health; this factor weighs in favor of neither parent.

6.      The home, school and community record of the child;

The school records show that the child has missed a significant number of school days while in Ohio. However, the records also report that the child is intelligent and performing well in school. We conclude that this factor does not weigh in either parent's favor.

7.      The reasonable preference of the child, if twelve (12) years of age or older; . . .The court may hear the preference of a younger child on request. The preferences of older children should normally be given greater weight than those of younger children;

The child is under twelve years of age and the record indicates that the court did not hear her preference. Accordingly, this factor is not applicable.

8.      Evidence of physical or emotional abuse to the child, to the other parent or to any other person;

There have been no allegations of abuse in this case. Therefore, this factor does not apply.

9.      The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child;

Nothing in the record on appeal indicates the character or behavior of any person in either Mother's or Father's household. Therefore, this factor is not applicable.

10.      Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

Mother relocated out of state without notifying Father or giving Father any information on the address or phone number of the child. Mother did, however, inform Father orally of her intention to move some months prior to the move. The evidence also shows that Mother did not give Father some of his specified visitation because of the move. While Mother was not entitled to move without giving the proper notice, nothing in the record suggests that the move was for a vindictive purpose. The testimony also shows that

Mother refused to sign for various court papers concerning her legal proceedings on behalf of the child and that Mother failed to put Father's name on the contact card at the child's school, which both show an unwillingness to facilitate Father's relationship with the child. Therefore, this factor weighs in favor of Father.

Having considered all the factors, we cannot conclude that the trial court erred in changing custody to Father. Mother's actions evince an unwillingness to facilitate a close relationship between Father and the child, especially considering her lack of credibility with the trial court. Father also has a stable home where the child has been living for nearly the last two years. Although Mother had been the child's primary care giver during the child's life prior to Father's petition, that fact alone is not enough to convince this Court that the trial court erred in naming Father primary residential parent.

Mother next argues that the trial court erred in improperly assisting Father, who was acting *pro se* in the trial court. This Court has recently set out the "guiding principles" for dealing with *pro se* litigants, stating:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many *pro se* litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a *pro se* litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse *pro se* litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Jackson v. Lanphere*, No. No. M2010–01401–COA–R3–CV, 2011 WL 3566978, at *3 (Tenn. Ct. App. Aug. 12, 2011) (quoting *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)). Mother's attorney, however, did not object to the judge's assistance during the trial. Failure to object during the trial constitutes a waiver of the issue on appeal. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Because a timely objection to the trial court's assistance could perceivably have caused the judge to modify her conduct, this issue is waived on appeal for a lack of objection in the trial court.

Even if this issue was not waived on appeal, from our review of the record, we do not

conclude that the juvenile court judge improperly assisted Father. Specifically, Mother does not point out any instances, nor can we find any, where the juvenile court judge excused Father from complying with the substantive and procedural rules that Mother's attorney was required to follow. While the juvenile court judge did help Father with the confusing process of introducing documents into evidence, the judge did not suspend the requirements of authentication with regard to Father and gave Mother's attorney every opportunity to object to those documents. Mother's only support for her argument that the trial judge's conduct showed bias is the case of *State v. Brock*, 940 S.W.2d 577 (Tenn. Crim. App. 1996), where the trial judge *sua sponte* reopened proof because an element of the crime alleged, the age of the victim, had not been proven. The juvenile judge's slight assistance to Father in this case does not rise to the level of conduct in *Brock*. Accordingly, we discern no error in the juvenile court judge's conduct.

Finally Mother asks for her attorneys fees in both the trial level and on appeal pursuant to Tennessee Code Annotated Section 36-5-103(c), which states:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Only the prevailing party is entitled to recover attorney's fees. *See In re Landon A. F.*, No. M2010-01180-COA-R3-JV, 2011 WL 1630945, (Tenn. Ct. App. April 26, 2011). Having decided all the substantive issues in Father's favor, we decline to award attorney's fees to Mother.

In Father's statement of the issues, he also argues for his costs incurred in the trial court and for this appeal; however Father not does address this issue in the body of his brief.[14] Accordingly this issue is waived. *See Bean v. Bean*, 40 S.W.3d 52, 56 (Tenn. Ct.

---

[14]Father's amended brief likewise does not argue that Father should be awarded costs incurred in the

(continued...)

App. 2000) ("[A]n issue is waived where it is simply raised without any argument regarding its merits.") (citing *Blair v. Badenhope*, 940 S.W.2d 575, 576-577 (Tenn. Ct. App. 1996); *Bank of Crockett v. Cullipher*, 752 S.W.2d 84, 86 (Tenn. Ct. App. 1988)).

## V. Conclusion

The judgement of the Juvenile Court is affirmed. Costs of this appeal are taxed to the Appellant, Stacy M., and her surety.

_____
J. STEVEN STAFFORD, JUDGE

---

[14](...continued)
trial court or on appeal.